**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARJAC, LLC, a New Jersey Limited Liability Company, DJF REALTY, INC., a New Jersey Corporation, MARIO LEVECCHIA, and JACK FIORENZA, JR., | : : : : : | |
| Plaintiffs, | : : | Civil Action No. 06-1440 (JAG) |
| v. | : : : | **OPINION** |
| RICHARD TRENK - TOWNSHIP ATTORNEY, BOOKER, RABINOWITZ, TRENK, LUBETKIN, TULLY, DIPASQUALE & WEBSTER, P.C., PLANNING BOARD FOR THE TOWNSHIP OF WEST ORANGE, MAYOR AND COUNCIL FOR THE TOWNSHIP OF WEST ORANGE, JOHN MCKEON - MAYOR, SUSAN BORG - PLANNING BOARD DIRECTOR WEST ORANGE BUILDING DEPT., RUSSELL DESANTIS - BUILDING SUB-CODE OFFICIAL, WEST ORANGE HEALTH DEPT., JAMES MONTGOMERY - HEALTH INSPECTOR, AND JOHN DOES A-Z, | : : : : : : : : : : : : : : : : : : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on Defendants' motion to dismiss Plaintiffs'

Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ.

P. 12(b)(6).   In the alternative, Defendants move for a more definite statement, pursuant to Fed.

R. CIV. P. 12(e).   For the reasons stated below, Defendants' motion to dismiss will be granted in part and denied in part, and Defendants' motion for a more definite statement will be denied.

## I.  INTRODUCTION

On March 27, 2006, Plaintiffs Marjac, LLC, DJF Realty, Inc., Mario Lavecchia, and Jack Fiorenza (collectively, "Plaintiffs") filed the instant action against Defendants Richard Trenk,[1] the Planning Board for the Township of West Orange ("West Orange"), West Orange Mayor John McKeon, West Orange Building Department Planning Board Director Susan Borg, Building Sub-Code Official Russell Desantis, the West Orange Health Department, Health Inspector James Montgomery, and various John Doe defendants (collectively, "Defendants").   Plaintiffs' Complaint alleges the following causes of action against Defendants: (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) violation of 42 U.S.C. § 1983 pursuant to the Fifth and Fourteenth Amendments; (4) violation of the New Jersey Civil Rights Act, N.J. STAT. ANN. § 10:6-2(c); (5) breach of fiduciary duty; (6) legal malpractice; (7) civil conspiracy; (8) intentional infliction of emotional distress; (9) estoppel; and (10) racketeering under N.J. STAT. ANN. § 2C:41-2.   Defendants now move to dismiss all causes of action asserted in Plaintiffs' Complaint on the ground that each fails to assert a claim upon which relief may be granted.   In the event that this Court finds that any of Plaintiffs' claims are viable, Defendants move for a more definite statement of Plaintiffs' claims.

## II.  FACTUAL BACKGROUND

Plaintiffs contend that in September 2002, they spent $1,350,000 purchasing a liquor license and property at 466 Prospect Avenue in West Orange, New Jersey (the "Property"), with

---

[1]Richard Trenk serves as counsel for the Township of West Orange.

2

the goal of establishing a landmark destination featuring Essex County's trendiest new restaurant, one of New Jersey's largest and most upscale nightclubs, and a first-class catering business. (Complaint ("Compl."), ¶ 1.)  The Property is located directly across from the Essex Green Shopping Plaza and a TGI Friday's restaurant.  (Id., ¶ 2.)  To finance their business endeavor, Plaintiffs took out two small business loans totaling $2 million with Commerce Bank, a $508,000 equipment loan with Northfield Bank, and several personal loans.  (Id., ¶ 3.)  Plaintiffs contend that they have poured more than $4 million into their business, and that they have staked their livelihoods on its success.  (Id.)

In November 2002, the West Orange Planning Board (the "Planning Board") approved Plaintiffs' preliminary plans, and the West Orange Building Department (the "Building Department") later approved Plaintiffs' completed plans.  (Id., ¶ 4.)  Plaintiffs allege that they completed 90% of the construction of their business under the direct and ongoing supervision of the  Building Department.  (Id.)

On June 16, 2004, Defendant Desantis, a Building Sub-Code Official, issued a Stop Work Order allegedly with the assistance of Defendants Planning Board Director Borg, and Township Attorney Trenk.  (Id., ¶ 5.)  Desantis purportedly claimed that Plaintiffs' construction failed to comport with the approved architectural plans, and that he did not have a copy of the plans.  (Id.)  Plaintiffs contend that Desantis actually had a signed-off copy of the plans in his car.  (Id.)

When the Stop Work Order was issued, Trenk allegedly ordered everyone on the property to stop work, requested their names, and then proceeded to dictate to those persons what he perceived as various code violations by Plaintiffs.  (Id., ¶ 6.)

Two weeks later, the Stop Work Order was lifted by an unspecified court on the condition

3

that Plaintiffs obtain a bond for their construction work.  (Id., ¶ 7.)  Plaintiffs allege that they complied with the court's bond order, but were nonetheless confronted by Trenk, who claimed that the bond that had been posted was insufficient, and otherwise harassed Plaintiffs by stopping by the Property and directing West Orange personnel to photograph the Property repeatedly.  (Id.)

Plaintiffs contend that around the time that the Stop Work Order was lifted, Trenk began to slander their Italian heritage.  Plaintiffs allege that Trenk ordered municipal employees not to conduct any inspections of the property because Plaintiffs are "Wiseguys" with a "lot of money" behind them.  (Id., ¶ 8.)  Trenk also allegedly stated, "We don't want these 'Wiseguys' in our town."  (Id.)  When Trenk saw Plaintiff Mario LaVecchia wearing a *Sopranos* t-shirt, he allegedly commented, "Keep doing what you are doing, it's going to get you far."  (Id.)  He also purportedly told a West Orange detective that Plaintiffs "were not investigated properly" because "there is 'Mafia Money'" behind them.  (Id.)  Plaintiffs also allege that at a West Orange Department Heads meeting one or more of those present stated that Plaintiffs "will use the place to launder money," when discussing Plaintiffs' development of the Property.  (Id.)

Plaintiffs contend that Trenk solicited the State Department of Community Affairs ("DCA") to take over supervision of Plaintiffs' business project, despite the fact that the DCA usually assumes jurisdiction over public projects subject to competitive bidding, as opposed to private projects.  (Id., ¶ 9.)  Plaintiffs contend that their project was indefinitely delayed as a result of the DCA's involvement because DCA approval requires substantially more detail than local planning boards and building departments.  (Id.)

In July 2004, the DCA issued a Stop Work Order that sent Plaintiffs back to the drawing board to create updated plans for the development of the Property.  (Id., ¶ 10.)  The day after the

4

Stop Work Order was issued, Trenk allegedly came to the Property with a camera, and began threatening tradespeople working at the site; Plaintiffs contend that Trenk yelled, "You have to stop work and I am calling the Police," and told the tradespeople they would not be paid.  (Id.)

Plaintiffs further allege that Defendants attempted to revoke their approvals in August 2004, despite retired West Orange Construction Code Official Thomas Biondi's testimony that Plaintiffs had complied with all Code requirements throughout the course of construction.  (Id., ¶ 11.)  Also, in August 2004, West Orange Police Lieutenant Lang allegedly commented to one of Plainitffs' attorneys, "Why don't you do like the other guys, pay $50,000 and it will go away." (Id., ¶ 19.)

In September 2004, Trenk allegedly came to the Property, yelled at workers to stop construction, and called the police.  Plaintiffs contend that after learning of Trenk's actions, the DCA lifted the Stop Work Order it had issued.  (Id., ¶ 12.)  Despite the lifting of the Stop Work Order, a West Orange Police officer, on the orders of his sergeant, allegedly came to the Property a few days after the Order had been lifted, and advised Plaintiffs that no work could continue. (Id.)

Plaintiffs allege that in October 2004, West Orange improperly adopted an ordinance amending its zoning provisions to grant the Planning Board the authority to revoke previously-granted approvals.  Plaintiffs contend that this ordinance violates municipal land use law.  (Id., ¶ 13.)  Pursuant to this ordinance, on February 2, 2005, the Planning Board adopted a resolution revoking and deeming null and void the approvals previously granted to Plaintiffs.[2]  (Id.)

---

[2]The legality of the Planning Board's resolution is currently being litigated in state court, in actions entitled *Throne v. DJF Realty, Inc., Docket No.: ESX-L-6519-05,* and *MARJAC, L.L.C. et al. v. Planning Board of West Orange, et al.*, *Docket No.: ESX-L-8573-05.*  (Id., ¶ 13.)

5

On December 3, 2004, Borg allegedly sent a fax to the DCA indicating that Plaintiffs had no approvals, when in fact the Planning Board did not actually adopt its resolution lifting Plaintiffs' approvals until February 2005.  In response to Borg's alleged miscommunication, the DCA instituted another Stop Work Order on December 9, 2004.  (Id., ¶ 14.)

Plaintiffs assert that Defendants also launched an "all-out assault" on their liquor license. Plaintiffs contend that Trenk placed irrational and arbitrary restrictions on the renewal of Plaintiffs' liquor license such as: (1) limiting Plaintiffs' occupancy to 250 people, when they were originally approved to host 520 people; and (2) demanding that Plaintiffs restrict their hours to a midnight closing, while every other similarly situated business in town is permitted to serve liquor until 2:00 a.m.  (Id., ¶ 15.)  Plaintiffs allege that these restrictions would sabotage their business.  (Id.)  Plaintiffs further maintain that Trenk personally solicited Eagle Ridge Condominium Association residents to request that obscenity restrictions be placed on Plaintiffs' license, although there had been no objections to Plaintiffs' license in 2004.  (Id., ¶ 16.)

Plaintiffs contend that because of Trenk's actions and involvement in sabotaging their liquor license, he was required to recuse himself from Plaintiffs' Alcoholic Beverage Control ("ABC") hearing.  Trenk failed to do so, however, allegedly in violation of West Orange Township Code, Article IV, § 2-6.2(a), which provides that the Clerk – not the township attorney – "shall keep and record the minutes of each Council meeting and of each committee meeting." (Id., ¶ 17.)  After the hearing, Plaintiffs allegedly were unable to obtain a copy of the minutes because the recording unit meant to memorialize the hearing had malfunctioned.  (Id.)

Plaintiffs assert that Trenk's conduct was motivated by the desire to (1) generate substantial legal fees; and (2) aid his partners' business venture, 22 West Restaurant Group,

6

which was threatened by Plaintiffs' competitive business plan.  (Id., ¶¶ 20, 21.)

Plaintiffs also contend that all of the conduct alleged in the Complaint occurred under the watch of Mayor John McKeon, who was duty-bound to "supervise all of the departments of the Township government."  (Id., ¶ 22.)

### III.  DISCUSSION

### A.    Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  All reasonable inferences, however, must be drawn in the plaintiff's favor.  See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  Moreover, the claimant must set

forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist.  See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46.  "The defendant bears the burden of showing that no claim has been presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy."  New York v. Hill, 528 U.S. 110, 118 (2000).  Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.  "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

**B.     Plaintiffs' 42 U.S.C. § 1983 Claims (Count Three)**

Plaintiffs' third cause of action contends that Defendants, acting "under the color of authority of the statutes of the State of New Jersey," acted arbitrarily, capriciously, and unreasonably in violation of (1) Plaintiffs' Fifth Amendment property rights, "by enacting an illegal and improper taking of Plaintiffs' premises without due process of law;"(2) Plaintiffs' Fourteenth Amendment right to Equal Protection of the law; (3) Plaintiffs' rights under the Commerce Clause, by destroying their business; and (4) Plaintiffs' Fourteenth Amendment Substantive Due Process rights, by "hampering Plaintiffs' proposed development in order to profit personally" and "exhibiting deliberate bias against Plaintiffs and sabotaging the project due to a perceived stereotype relating to their Italian heritage" in a "manner that shocks the conscience."  (Compl., Third Count, ¶¶ 2-9.)

"Section 1983 imposes civil liability upon any person who, acting under the color of state

8

law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  Hill v. Borough of Kutztown, 455 F.3d 225, 233 n. 8 (3d Cir. 2006); (quoting Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir. 2005)); see 42 U.S.C. § 1983.  "In order to state a claim under § 1983 , a plaintiff must allege that his constitutional rights were violated by someone acting under color of state law." Jerrytone v. Musto, 167 Fed. Appx. 295, 300 (3d Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  "Accordingly, '[t]he first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'''"  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998))).

Defendants argue that Plaintiffs' cause of action under § 1983 should be dismissed because Plaintiffs' complaint fails to allege that they have been deprived of any constitutional right.  Defendants specifically argue that Plaintiffs' constitutional claims are unripe; Defendants contend that because the Planning Board has yet to make a final determination on Plaintiffs' amended site plan application, Plaintiffs have failed to allege the deprivation of a right.  In their opposition in response to Defendants' motion, Plaintiffs only argue that they have sufficiently alleged a § 1983 claim for violation of their substantive due process rights, and their rights under the Commerce Clause.[3]

_____

[3]Plaintiffs do not address their § 1983 claims pursuant to the Fifth Amendment, or the Fourteenth Amendment's Equal Protection clause, and has thus abandoned them.  See Testa v. Town of Madison, No. Civ. 04-185-B-W, 2005 WL 2365319, at * 12 (D. Me. Sept. 26, 2005) ("The Town argues that the existing record cannot support Testa's defamation claim.  Testa fails to oppose this aspect of the motion in her opposition memorandum.  Accordingly, Testa has

1.      *Legal Standard Governing The Ripeness Doctrine*

Defendants' challenge to Plaintiffs' § 1983 claims centers on the ripeness doctrine.  "The ripeness doctrine serves 'to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.' "  Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir. 2004) (quoting Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003)).  In Williamson County Regional Planning Com. v. Hamilton Bank, 473 U.S. 172, 186, 194-95 (1985), the Supreme Court held that an as-applied Fifth Amendment Just Compensation Takings claim against a municipality's enforcement of a zoning ordinance is not ripe until (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" (the "finality rule"), and (2) the plaintiff has unsuccessfully exhausted the state's procedures for seeking "just compensation,"

---

abandoned her defamation claim and judgment should enter in favor of the Town on count II"); Bayne v. Provost, No. 1:04 CV 44, 2005 WL 1871182, at * 4 (N.D.N.Y. Aug. 4, 2005) ("The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim"); Mack v. St. Mobile Aerospace Engineering, Inc., No. Civ.A.04-0307-BH-B, 2005 WL 1768646, at * 29 (S.D. Ala. July 26, 2005) ("Wayne apparently does not oppose MAE's summary judgment regarding his claim of demotion from 'Acting' Lead, or has abandoned the claim, inasmuch as he has failed to respond in opposition to same"); Akins Foods, Inc. v. American and Foreign Ins. Co., No. C04-2195JLR, 2005 WL 2090678, at *4 n. 8 (W.D. Wash. Aug. 30, 2005) ("a party opposing summary judgment cannot simply rest on its allegations without any significant probative evidence supporting its claims. . . .  By not bringing forward sufficient evidence or authority to oppose Defendant's motion for summary judgment, Akins has abandoned its claims") (internal citations omitted)); Moss v. Technicolor, Inc., No. CV-99-05601-WJR (Mcx), 2001 WL 1472673, at * 16 (C.D. Cal. May 4, 2001) ("This Court concludes that this claim should be dismissed because Plaintiffs have abandoned it. Plaintiffs failed to oppose Defendants' various attacks on these claims.  As such, Plaintiffs failed to meet their burden . . . In other words, Plaintiffs have conceded this issue"). This Court shall only address whether Plaintiffs have stated a cause of action under § 1983, pursuant to the Fourteenth Amendment's substantive due process provisions, and/or the Commerce Clause.

so long as the procedures provided by the state were adequate.

The "Williamson[ ] finality rule bars not only as-applied Just Compensation Takings claims, but also as-applied Substantive Due Process and Equal Protection claims by property owners or tenants who have challenged the denial of a permit by an initial decision-maker but failed to take advantage of available, subsequent procedures.'"  County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 164 (3d Cir. 2006) (quoting Lauderbaugh v. Hopewell Twp., 319 F.3d 568, 574 (3d Cir. 2003)) (citing Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292, 1295 (3d Cir. 1993)).  "Only once a decision maker has arrived at a definitive position on the issue" has a property owner been inflicted with "an actual, concrete injury.'"  County Concrete, 319 F.3d at 574 (quoting Williamson, 473 U.S. at 192).

The absence of "just compensation" is not part of a due process or Equal Protection injury, however.  County Concrete, 442 F.3d at 169 (citing Williamson, 473 U.S. at 197).  Thus, if a Substantive Due Process or Equal Protection claim satisfies the finality rule, it is ripe for adjudication.  Id.

## 2.   *Plaintiffs' Substantive Due Process Claim Is Ripe For Adjudication*

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. CONST. AMEND. XIV.  "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest."  County Concrete, 319 F.3d at 575 (quoting Taylor Inv., 983 F.2d at 1292).  Plaintiffs' complaint effectively argues that Defendants abused the zoning process in West Orange to deprive them of the lawful use of the Property because of impermissible personal and political animus.

11

In Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir. 1995), the Third Circuit held that a plaintiff landowner need not comply with the finality rule where, instead of "appealing from an adverse decision on a permit application," the plaintiff claims that the defendant Township officers "deliberately and improperly interfered with the process by which the Township issued permits, in order to block or to delay the issuance of plaintiff's permits, and that defendants did so for reasons unrelated to the merits to the application for the permits." Id., 57 F.3d at 267-68.  It was asserted by the plaintiff in Blanche Road that the Township "engaged in a campaign of harassment designed to force [it] to abandon its development of [an] industrial park." Id. at 258.  The Blanche Road court explained that the type of Substantive Due Process claim at issue there was "substantively different" from "that presented in the ripeness cases" and that "[s]uch actions, if proven, are sufficient to establish a [Substantive Due Process] violation, actionable under § 1983, even if the ultimate outcome of plaintiff's permit applications was favorable." Id. at 268.  Thus, no further appeals were necessary in order to have a ripe, final determination for a federal court to review.

Plaintiffs allege that Defendants violated the Substantive Due Process Clause by "hampering Plaintiffs' proposed development in order to profit personally" and "exhibiting deliberate bias against Plaintiffs and sabotaging the project due to a perceived stereotype relating to their Italian heritage" in a "manner that shocks the conscience."  (Compl., Third Count, ¶¶ 2-9.)  The Complaint alleges that the alleged campaign to prevent Plaintiffs from developing the Property was spearheaded by Trenk, who, along with others, engaged in a campaign of harassment that has forestalled the construction of Plaintiffs' business.  (See Compl., ¶¶ 7, 8, 10, 15.)

These allegations parallel those asserted by the plaintiff in <u>Blanche Road</u>.  This Court finds that such claims are therefore sufficient to establish a ripe Substantive Due Process claim, regardless of the outcome of subsequent appeals for relief to municipal zoning boards.  Thus, Plaintiffs' claim under § 1983 and the Substantive Due Process clause is ripe for adjudication, and Defendants' motion to dismiss Plaintiffs' Substantive Due Process claim sub judice is denied.

### 3. *Plaintiffs Have Failed To State A Claim Under The Commerce Clause*

Defendants also appear to extend their ripeness challenge to Plaintiffs' § 1983 claim pursuant to the Commerce Clause.  Plaintiffs counter that they have stated adequately a claim for relief under the Commerce Clause by alleging that their business involves interstate commerce, and that Defendants, motivated by "protectionist sentiment," destroyed and sabotaged their business.  (See Compl., Third Court, ¶ 7.)  This Court cannot determine whether Plaintiff's Commerce Clause claim is ripe because Plaintiffs have failed to state a claim that could possibly fall within the ambit of the Commerce Clause.

To state a § 1983 claim for violation of the Commerce Clause, Plaintiffs must allege that a challenged law or regulation imposes a burden on interstate commerce that is excessive and not incidental to the local benefits of the law or regulation.  <u>See Pike v. Bruce Church, Inc.</u>, 397 U.S. 137, 142 (1970).[4]  Plaintiffs' Complaint, which tersely alleges that Defendants violated the

---

[4]In <u>Dennis v. Higgins</u>, 498 U.S. 439 (1991), the Supreme Court upheld a cause of action under § 1983 based on the Commerce Clause, rejecting the argument that the Commerce Clause could not be the basis of a § 1983 cause of action because it "merely allocates power between the Federal and State Governments and does not confer 'rights.' " <u>Id.</u> at 447.  The Court instead held that the Commerce Clause both was a "power allocating" provision and constituted a "substantive restriction on permissible state regulation of interstate commerce." <u>Id.</u> (internal quotation marks and citation omitted).

Commerce Clause by destroying their business, cannot be construed as a challenge to a governmental law or regulation, which burdens interstate commerce.  Plaintiffs have failed to state a claim upon which relief can be granted, and their Commerce Clause under § 1983 must be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

### C. Plaintiffs' New Jersey Civil Rights Act, N.J. STAT. ANN. § 10:6-2(C) Claim (Count Four)

Plaintiffs' fourth cause of action asserts a claim under the New Jersey Civil Rights Act, N.J. STAT. ANN. § 10:6-2(C).  Defendants contend that Plaintiffs have failed to state a cause of action under this statute because they have not alleged sufficiently that Defendants engaged in discrimination against a protected class.  Even if this were true, Defendants' argument is unavailing.

N.J. STAT. ANN. § 10:6-2(C) provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

Plaintiffs' complaint alleges that "by causing Plaintiffs to be deprived of his [sic] constitutionally guaranteed rights of liberty and property secured and guaranteed under the Commerce Clause, and the Fifth and Fourteenth Amendments of the Constitution of the United States, and corresponding rights guaranteed by the New Jersey State Constitution . . . Defendants have violated the New Jersey Civil Rights Act . . ."  (Compl., Fourth Count, ¶ 2.)

Because Plaintiffs have successfully stated a claim for the deprivation of their Substantive

14

Due Process rights, which are secured by the Constitution of the United States, Plaintiffs have also successfully stated a claim for relief, pursuant to N.J. STAT. ANN § 10:6-2(c).  This Court denies Defendants' motion to dismiss Plaintiffs' N.J. STAT. ANN § 10:6-2(c) claim.

### D.    **Plaintiffs' State Law Racketeering Claim (Count Ten)**

Plaintiffs' tenth cause of action purports to state a claim under the New Jersey Racketeer Influenced Corrupt Organizations Act ("RICO"), N.J. STAT. ANN. 2C:41-4(c) ("state RICO statute").[5]  The state RICO statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity."  N.J. STAT. ANN. 2C:41-2(c).  Under N.J. STAT. ANN. § 2C:41-4(c), "[a]ny person damaged in his business or property by reason of a violation of N.J. STAT. ANN. § 2C:41-2 may sue" the violating party.

Defendants argue that Plaintiffs have failed to state a claim under the state RICO statute because: (1) they have failed to allege that Defendants participated in a "pattern of racketeering activity"; (2) they have failed to meet the "continuity" requirement necessary to establish a pattern of racketeering activity; (3) they have failed to allege that Defendants are the "proximate cause" of Plaintiff's injuries; and (4) they have failed to meet the heightened pleading requirements of FED. R. CIV. P. 9(b), which requires that allegations involving fraud "be stated with particularity."[6]  This Court will address each of these challenges to Plaintiffs' complaint in

---

[5]Contrary to Defendants' contention, Plaintiff does not assert a claim against Defendants for violations of the Federal Racketeer Influenced Corrupt Organizations Act ("RICO").

[6]Defendants do not contest that Plaintiffs have alleged the existence of an enterprise. West Orange constitutes an enterprise within the meaning of N.J. STAT. ANN. § 2C:41-1(2)(c).

turn.

### 1.    *Pattern Of Rackeering Activity*

To claim a "pattern of racketeering activity" properly, Plaintiffs must allege that (1) Defendants engaged in "at least two incidents of racketeering conduct one of which shall have occurred after the effective date of th[e] [A]ct and the last of which shall have occurred within 10 years . . . after a prior incident of racketeering activity"; and (2) "the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents."  N.J. STAT. ANN. § 2C:41-1(d).

Plaintiffs' Complaint alleges that the individual Defendants, under the umbrella of West Orange, devised a scheme in the Summer of 2004 to deprive Plaintiffs of their money and property through extortion, fraudulent practices, wire fraud, violation of the Hobbs Act, 18 U.S.C. § 1951, and interference with Plaintiffs' Small Business Association loan in violation of 18 U.S.C. § 245(b)(1)(B).  (Compl., ¶¶ 2-17.)  Each of these alleged offenses occurred after the effective date of the statute, within ten years of one another, and constitutes a predicate act of racketeering, as that term is defined in the state RICO statute.  See N.J. STAT. ANN. § 2C:41-1 (indicating that "[r]acketeering activity" includes extortion; and forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes).  Therefore, this Court finds that Plaintiffs have alleged a pattern of racketeering activity.  To the extent Defendants' motion to dismiss Plaintiffs' state RICO claim is grounded in their contention that

--------

See Genty v. RTC, 937 F.2d 899, 906-07 (3d Cir. 1991).

Plaintiffs have failed to allege a pattern of racketeering activity, it is denied.[7]

### 2.   *Continuity*

Contrary to Defendants' arguments, New Jersey's RICO statute does not require that continuity be alleged, or even established.  See Maxim Sewerage Corp. v. Monmouth Ridings, 640 A.2d 1216, 1222-1223 (N.J. Super. Ct. Law Div. 1993) ("New Jersey's statute does not require a showing of continuity . . .  Federal RICO, however, is more restrictive"); State v. Ball, 632 A.2d 1222, 1259 (N.J. Super. Ct. App. Div. 1993) ("since the New Jersey statute explicitly requires only a showing of relatedness among predicate acts, there is no reason why the additional element of continuity, which is associated with Federal RICO, should be grafted onto New Jersey's statutory definition").  Thus, even assuming Plaintiffs' complaint fails to allege continuity, such an omission does not necessitate dismissal of Plaintiffs' state RICO claims.  This Court must deny Defendants' motion on this basis.

### 3.   *Proximate Cause*

Defendants also argue that Plaintiffs' state RICO claims must be dismissed because the complaint fails to meet the "proximate cause" requirement regarding damages.  Defendants base their argument on their contention that "Plaintiffs are the sole cause of any alleged damages as they have failed to return to the Planning Board for final resolution of all issues concerning the subject property."  (Def.'s Br. at 17.)

This Court cannot agree that Defendants' argument warrants dismissal.  In deciding a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), this Court is limited to a consideration of

---

[7]As explained *infra*, Plaintiffs have met the Rule 8 and 9(b) pleading standard regarding at least two of the predicate acts of fraud pled in their Complaint.

the contents of the Complaint.  See, e.g., County Concrete, 442 F.3d at 172 n.2 (3d Cir. 2006)

("the District Court here dismissed Counts One through Four on a Rule 12(b)(6) motion to

dismiss, and, thus, our review is limited to the factual allegations in the complaint").  Here, the

Complaint clearly alleges that "Defendants' pattern of racketeering activity directly damages

Plaintiffs in that Defendants' conduct was the cause-in-fact of Plaintiffs' damages, as well as the

legal and proximate cause."  (Compl., Count Ten, ¶ 22.)[8]  This Court shall deny Defendants'

motion to dismiss Plaintiffs' RICO claims for failure to allege adequately that Defendants

proximately caused Plaintiffs' damages.

### 4.   *Rule 9's Pleading Requirements*

As explained, Plaintiffs' complaint purports to assert a state RICO claim predicated on

Defendants' alleged extortion, fraudulent practices, wire fraud, the Hobbs Act, and interference

with Plaintiffs' small business loan in violation of 18 U.S.C. § 245(b)(1)(B).  (Compl., Count

Ten, ¶ 14.)  Defendants argue that Plaintiffs' allegations are insufficient under Rule 9(b)'s

pleading requirements.  Plaintiffs counter that they have pled predicate acts sufficiently to meet

the specificity required under Rule 9(b).

### a.   **Fraud And Wire Fraud**[9]

To the extent Plaintiffs' state RICO action is predicated on fraudulent practices and wire

fraud, it must be pled with specificity, pursuant to FED. R. CIV. P. 9(b).  See Lum v. Bank of

---

[8]This Court notes that whether Defendants actually did cause Plaintiffs' damages through
their conduct is a question of fact, not properly addressed in a 12(b)(6) motion.  The causation
question is properly addressed at a later stage in these proceedings, i.e., at the summary judgment
phase of this case or at trial.

[9]Contrary to Defendants' contentions, Plaintiffs do not base their state RICO claim on a
predicate act of mail fraud.  (See Compl., Tenth Count, ¶¶ 12-15.)

*America*, 361 F.3d 217, 223 (3d Cir. 2004); FED. R. CIV. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity").[10]

"In order to satisfy Rule 9(b), [P]laintiffs must plead with particularity 'the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *Lum*, 361 F.3d at 223-24 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* at 224 (citing *Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 675 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658-59 (3d Cir. 1998); *Klein v. General Nutrition Co., Inc.*, 186 F.3d 338, 345 (3d Cir. 1999)).

### (i)    *Fraudulent Practices*

Plaintiffs' state RICO claim alleges that "Defendants' conduct in the affairs of the

---

[10]The federal wire fraud statute prohibits the use of interstate wires for purposes of carrying out any scheme or artifice to defraud. See 18 U.S.C. § 1343. "'A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528 (3d Cir. 1998) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d Cir. 1991)).

enterprise[, i.e., West Orange,] as documented in Paragraphs 1 through 23 constitutes fraudulent practices thereby falling within the definition of racketeering set forth in N.J.S.A. 2C:41-1(a)(1)(o)."  (Compl., ¶ 13.)  This statement is the only specific allegation going to the nature of the predicate act of "fraudulent practices."  Defendants do not specify the "date, place or time" of the fraudulent practice or "who made a misrepresentation to whom and the general content of the misrepresentation."  Lum, 361 F.3d at 223-24.  This lack of specificity requires this Court to find that Plaintiff has failed to allege the predicate act of fraudulent practices adequately, in accordance with Rule 9(b)'s pleading requirements.  Thus, to the extent Plaintiffs' state RICO claims relies upon fraudulent practices as a predicate act, they cannot survive.

### (ii)    *Wire Fraud*

Plaintiff's state RICO claim also alleges that Defendants committed acts of wire fraud in violation of 18 U.S.C. § 1343.  Plaintiffs specifically allege:

> Defendants willfully and knowingly devised a scheme or artifice to injure Plaintiffs by means of false pretenses, representations, and/or promises, and caused to be transmitted by means of wire and interstate commerce, writings, signs, signals, pictures, and/or sounds for the purpose of executing the scheme to defraud, in particular the following:
> a.    communicating with Plaintiffs on numerous occasions via telephone;
> b.    upon information and belief, utilizing the telephone and/or other forms of wire communications to communicate among themselves and with third parties; and
> c.    fraudulent fax dated December 3, 2004 from Susan Borg to the State DCA

(Compl., Count Ten, ¶ 15.)  Earlier in the Complaint, Plaintiffs allege that Borg sent a fax to the DCA indicating that Plaintiffs had no approvals, when in fact the Planning Board did not actually adopt its resolution lifting Plaintiffs' approvals until February 2005.  In response to Borg's alleged miscommunication, the DCA instituted another Stop Work Order on December 9, 2004.

20

(Id., ¶ 14.)  Plaintiffs further allege that the activities chronicled throughout the complaint could only have been carried out through wire communications.  (Compl., Count Ten, ¶ 16.)  Plaintiffs also assert that the Defendants who did not carry out the alleged acts of racketeering aided and abetted those acts.  (Id., ¶ 18.)

This Court finds that with the exception of Plaintiffs' allegation that Borg transmitted a fraudulent fax to the DCA in an effort to shut down Plaintiffs' construction efforts, Plaintiffs have failed to aver wire fraud adequately as a predicate act to their state RICO claims.  With the exception of the Borg fax transmission, Plaintiffs have failed to specify  the "date, place or time" of the fraudulent practice or "who made a misrepresentation to whom and the general content of the misrepresentation."  Lum, 361 F.3d at 223-24.  On the other hand, the allegations regarding the Borg transmission have met the Rule 9(b) pleading standard.  Plaintiffs have alleged that on December 3, 2004, Borg transmitted a fax to DCA misrepresenting Plaintiffs' approvals (Compl., ¶ 14; Compl., Count Ten, ¶ 15.)  This Court finds that to the extent it relies on the predicate act of wire fraud, Plaintiffs' state RICO claim can only be based on the wire fraud allegedly committed by Borg in transmitting the fax to DCA.

### b.	Extortion, Hobbs Act, and 18 U.S.C. § 245(b)(1)(B)

To the extent Plaintiffs' state RICO action is predicated on extortion, the Hobbs Act,[11]

---

[11]An individual commits a crime under the Hobbs Act, 18 U.S.C. § 1951, if he "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section."  18 U.S.C. § 1951(a).

and 18 U.S.C. § 245(b)(1)(B),[12] their allegations need only satisfy Rule 8's general notice-pleading standard.  See Rose v. Bartle, 871 F.2d 331, 362 n. 53 (3d Cir. 1989) (Rule 9(b) inapplicable because plaintiffs' claims of bribery and extortion do not allege fraud on part of defendants); Chiropractic Alliance of New Jersey v. Parisi, 854 F. Supp. 299, 308 (D.N.J. 1994) ("the allegations of theft by extortion, for example, are properly governed by the more lenient pleading requirement of FED. R. CIV. P. 8").  Plaintiffs have put Defendants on notice of these claims and the conduct underlying them.  Defendants' motion to dismiss Plaintiffs' RICO claim, to the extent it is predicated on Defendants' alleged extortion, violation of the Hobbs Act, and violation of 18 U.S.C. § 245(b)(1)(B), is denied.

Because Plaintiffs have alleged the predicate act of wire fraud regarding Borg's conduct with sufficient specificity, as well as the predicate acts of extortion, violation of the Hobbs Act, and violation of 18 U.S.C. § 245(b)(1)(B), more generally, Defendants' motion to dismiss Plaintiffs' state RICO claims for failure to state a claim upon which relief can be granted is denied.

### E.    Plaintiffs' Remaining State Law Tort Claims

#### 1.    *Plaintiffs' Allegedly Deficient Tort Claims Notice Does Not Warrant Dismissal Of Plaintiffs' Claims Pursuant To Rule 12(b)(6)*

Pursuant to the New Jersey Tort Claims Act ("NJTCA"), "[t]o bring an action in tort

---

[12]A person is in violation of 18 U.S.C. § 245(b)(1)(B) when "whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States."

against a 'public entity or public employee' in New Jersey, the claimant must file a notice of claim with the entity within ninety days of the accrual of the claim or else be 'forever barred' from asserting that cause of action."  County Concrete, 442 F.3d at 174 (citing N.J. STAT. ANN. § 59:8-3 and -8; Moon v. Warren Haven Nursing Home, 867 A.2d 1174, 1176 (N.J. Sup. Ct. 2005)).  The NJTCA requires that a notice of claim include the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;" a "general description of the injury, damage or loss incurred;" the "name or names of the public entity, employee or employees causing the injury;" and the amount of damages claimed.  N.J. STAT. ANN. § 59:8-4.

While Defendants' allegations that Plaintiffs' notice is deficient under the NJTCA may ultimately warrant dismissal of Plaintiffs' tort claims, this Court cannot make such a finding at this time.  In considering a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), this Court is limited to a consideration of the contents of the Complaint.  See Yarris v. County of Delaware, 465 F.3d 129, 134 (3d Cir. 2006) (at the motion-to-dismiss stage, the district court's "review is limited to the contents of the complaint and any attached exhibits").[13] This Court cannot determine whether Plaintiffs' NJTCA notice is sufficient without looking beyond the four corners of the Complaint.  Thus, Defendants' motion to dismiss Plaintiffs' tort

---

[13]The Third Circuit, however, has held that a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss," without converting the motion into a motion for summary judgment, "if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994).  This case, however, presents this Court with no such circumstance.  Unlike a contract, which forms the basis for a breach of contract claim, here Plaintiffs' NJTCA notice does not in any way form the *basis* for Plaintiffs' various state law causes of action.  To the extent that Defendants have proffered evidence related to the form of Plaintiffs' notice, this Court may not consider it at this juncture, on a Rule 12(b)(6) motion.

claims under Rule 12(b)(6), based on the alleged deficiencies in Plaintiffs' NJTCA notice, is denied.[14]

### 2.   *Plaintiffs' State Law Claims Are Ripe For Adjudication*

Defendants argue that all of Plaintiffs' claims are unripe because (1) Plaintiffs have failed to exhaust their administrative remedies "in failing to return to the Planning Board with a completed amended site plan application"; and (2) "Plaintiffs' own actions have caused the necessary changes in how they must now proceed with respect to site plan approvals."

This Court finds that Plaintiffs' claims are ripe for adjudication.  "The ripeness doctrine serves 'to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.' " Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir. 2004) (quoting Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003)).  As this Court has explained in its discussion of the ripeness of Plaintiffs' constitutional claims, in Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir. 1995), the Third Circuit held that a plaintiff landowner need not comply with the finality rule where, instead of "appealing from an adverse decision on a permit application," the plaintiff claims that the defendant Township officers "deliberately and improperly interfered with the process by which the Township issued permits, in order to block or to delay the issuance of plaintiff's permits, and that defendants did so for reasons unrelated to the merits to the application for the permits." Id., 57 F.3d at 267-68.  It was asserted by the plaintiff in Blanche Road that the Township "engaged in a campaign of

_____

[14]This Court notes that it will entertain Defendants' arguments under the NJTCA if they are raised at the appropriate time, e.g., in a motion for summary judgment.

harassment designed to force [it] to abandon its development of [an] industrial park." Id. at 258.

The Blanche Road court explained that the claim at issue there was "substantively different" from "that presented in the ripeness cases" and that "[s]uch actions, if proven, are sufficient to establish" an actual claim, even if the ultimate outcome of plaintiff's permit applications was favorable." Id. at 268. Thus, no further appeals were necessary in order to have a ripe, final determination for a federal court to review.

Looking to this precedent, this Court finds that Plaintiffs' claims are ripe despite Defendants' contentions that Plaintiffs have failed to seek a final administrative determination of Defendants' revocation of their permits. Like the plaintiff in Blanche, Plaintiffs claim that West Orange and its officers and agents deliberately and improperly interfered with the process through which West Orange issues permits, and controls development once permits are issued. This Court denies Defendants' motion to dismiss Plaintiffs' claims on the ground that they are unripe.

### 3. *Tortious Interference With Economic Advantage / Contractual Relations (Counts One And Two)*

Plaintiffs' first and second causes of action assert claims for tortious interference with prospective economic advantage, and tortious interference with contractual relations, generally. To state a claim for tortious interference with contract or prospective business advantage, Plaintiffs must allege that: (1) they had "some protectable right," or "reasonable expectation of economic advantage;" (2) "the interference was done intentionally . . . without justification or excuse;" (3) "the interference caused the loss of the prospective gain;" and (4) "the injury caused the damage." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (1989).

25

The Complaint must include allegations giving rise to some "reasonable expectation of economic advantage." Id.

Defendants argue that Plaintiffs' tortious interference claims should be dismissed, pursuant to Rule 12(b)(6), because Plaintiffs cannot establish the "malice" requirement essential to their claims. This Court rejects Defendants' argument. While it may be true that Plaintiffs will not ultimately be able to establish the so-called "malice" element of their tortious interference claims, such an inquiry is beyond this Court's purview in determining whether Plaintiffs have sufficiently *alleged* their claims. As has been explained *supra*, in considering a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), this Court is limited to a consideration of the contents of the Complaint. See, e.g., County Concrete Corp., 442 F.3d at 172 n.2 ("the District Court here dismissed Counts One through Four on a Rule 12(b)(6) motion to dismiss, and, thus, our review is limited to the factual allegations in the complaint").

Here, Plaintiffs have alleged that "Defendants have intentionally interfered with Plaintiffs' prospective economic advantage *without justification, thereby establishing malice . . .* ," and that "Defendants have intentionally interfered with Plaintiffs' contractual relations *without justification, thereby establishing malice . . .*" (Compl., First Count, ¶ 3 (emphasis added); Compl., Second Count, ¶ 3 (emphasis added).)

This Court finds that these allegations are sufficient under the notice-pleading standard to state the intent element of toritous interference. Defendants' motion to dismiss Plaintiffs' tortious interference claims for failure to state a claim upon which relief can be granted is denied.

### 4. *Breach Of Fiduciary Duty (Count Five)*

Plaintiffs' fifth cause of action asserts a claim for breach of fiduciary duty against

Defendants.  "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position."  McKelvey v. Pierce, 173 N.J. 26, 57 (2002) (citation omitted).  "The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care."  Id. (citing RESTATEMENT (SECOND) OF TRUSTS §§ 170, 174 (1959).  "[T]he fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship."  Id. (citing RESTATEMENT (SECOND) OF TORTS § 874 (1979)).

"Public officers hold positions of public trust, and stand in a fiduciary relationship to the people whom they have been appointed to serve."  State v. Markt, 384 A.2d 162, 166 (N.J. Super. Ct. App. Div. 1978) (citing Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474 (1952)).  "They must serve the public with the highest fidelity."  Id.  "The citizen is not at the mercy of his servants holding positions of public trust nor is he helpless to secure relief from their machinations except through the medium of the ballot, the pressure of public opinion or criminal prosecution."  Driscoll, 8 N.J. at 476.  "Whenever the acts of public officers fail to conform to the standard imposed by the fiduciary relationship in which they stand to the public, relief will be available in the civil courts."  Id.

Here, Plaintiffs allege that "Defendants, as public entities, elected officials, and political appointees stand in fiduciary relationship with their constituents."  (Compl., Fifth Count, ¶ 2.) "As fiduciaries . . . Defendants are under an inescapable obligation to serve the public, including taxpayers such as Plaintiffs, with the highest fidelity, intelligence, skill, diligence, conscientiousness, reasonableness, good faith, honesty, and integrity."  (Id., ¶ 3.)  Plaintiffs contend that by engaging in the conduct set forth in the Complaint, i.e., by engaging in and

promoting a campaign of harassment designed to halt the construction of Plaintiffs' business,

"Defendants breached their fiduciary duties to Plaintiffs, and said breach proximately caused

Plaintiffs' damages."  (Id., ¶¶ 6-7.)  The Complaint thereby alleges a fiduciary relationship, a

duty of "highest fidelity," a breach of that duty, and damages.[15]  These allegations suffice to state

a claim for breach of fiduciary duty.  Defendants' motion to dismiss Plaintiffs' breach of

fiduciary claim, pursuant to Rule 12(b)(6), is denied.

### 5.   *Legal Malpractice (Count Six)*

Plaintiffs' sixth cause of action asserts a claim for legal malpractice against Trenk and his

law firm.  To state a claim for legal malpractice, Plaintiffs must allege: (1) the existence of an

attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of

that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff."

McGrogan v. Till, 167 N.J. 414, 425 (2001) (citing Conklin v. Hannoch Weisman, 145 N.J. 395,

416 (1996)).  "At the most fundamental level, the legal-malpractice action provides a remedy for

negligent professional performance."  Id. (citation omitted).

Defendants argue that Plaintiffs have failed to allege the existence of an attorney-client

relationship creating a duty of care by the defendant attorney.  This Court agrees.  Trenk is

alleged to be West Orange's attorney.  (Compl. at 2.)  Nowhere in the Complaint do Plaintiffs

---

[15]Defendants argue that they acted in accordance with their fiduciary duty in halting
construction on Plaintiffs' property because Plaintiffs' failed to abide by the site plan approval
procedures set forth by state statute.  This contention, like many of Defendants arguments,
focuses on what the evidence will ultimately show, i.e., that Defendants were acting in
accordance with their fiduciary duties, rather than what is alleged in the Complaint.  Even if the
evidence ultimately produced does not support Plaintiffs' breach of fiduciary duty claim, because
Plaintiffs have alleged a claim upon which relief can be granted, this Court cannot dismiss
Plaintiffs' fifth cause of action, pursuant to Rule 12(b)(6).  See County Concrete Corp., 442 F.3d
at 172 n.2; Yarris, 465 F.3d at 134.

allege that they retained Trenk as their counsel.  Plaintiffs' conclusory allegation that an attorney-client relationship existed between Plaintiffs and Trenk does not suffice to meet the first element of a claim for legal malpractice.  While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Morse, 132 F.3d at 906 n.8.  Contrary to Plaintiffs' contentions, no fiduciary duty exists between Trenk, as the Township's counsel, and Plaintiffs, which gives rise to a legal malpractice claim.  This Court shall grant Defendants' motion to dismiss Plaintiffs' claim for legal malpractice, pursuant to FED. R. CIV. P. 12(b)(6).

### 6.    *Civil Conspiracy (Count Seven)*

Plaintiffs' seventh cause of action alleges a claim for "civil conspiracy."  Defendants have moved to dismiss this cause of action on the grounds that (1) under New Jersey law, there is no independent cause of action for "civil conspiracy"; and (2) it is impossible for a corporation and its agents to conspire with themselves.

In order to state a claim for "civil conspiracy," plaintiff must allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."  State, Dept. of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications Intern., Inc., 904 A.2d 775, 785 (N.J. Super. Ct. App. Div. 2006) (citing Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)).

"Most importantly, the 'gist of the claim is not the unlawful agreement, 'but the

29

underlying wrong which, absent the conspiracy, would give a right of action.'' " Id. (quoting Morgan, 268 N.J.Super. at 364 (quoting Bd. of Educ. v. Hoek, 38 N.J. 213, 238 (1962))).  "[A] cause of action for civil conspiracy is not an independent cause of action; rather, it depends on the existence of an underlying tort."  In re Lead Paint Litigation, No. A-1946-02T3, 2005 WL 1994172, at *20 (N.J. Super. Ct. App. Div. Aug. 17, 2005); see also Farris v. County of Camden, 61 F. Supp. 2d 307, 326 (D.N.J. 1999) (under New Jersey law, civil conspiracy is not an independent cause of action; it is a mechanism for expanding liability in the event that the plaintiff can prove the underlying tort); Board of Educ., Asbury Park v. Hoek, 38 N.J. 213, 238 (1962) ("The gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action").

### a.     Plaintiffs Successfully Allege An Underlying Tort

While Defendants are correct that a claim for civil conspiracy cannot exist absent an underlying tort, here, Plaintiffs' claim does not suffer from such a deficit.  As this Court has found, Plaintiffs have successfully alleged state tort claims (tortious interference, breach of fiduciary duty).  To the extent Defendants move to dismiss Plaintiffs' civil conspiracy claim for failure to allege an underlying wrong, Defendants' motion is denied.

### b.     Plaintiffs Have Failed To Allege That Two Or More Persons Engaged In The Alleged Conspiracy

Defendants also argue that Plaintiffs' civil conspiracy claim fails because all Defendants engaged in the alleged conspiratorial conduct in their roles as West Orange officials.  Defendants are correct that officials and/or employees of the same entity cannot conspire among themselves for purposes of establishing civil conspiracy.   "A corporation cannot conspire with itself, just as

an individual cannot conspire with himself." Selman v American Sports Underwriters Inc., 697 F. Supp. 225, 238 (W.D. Va. 1988). Since a corporation can only act through its agents, officers, and employees, it is legally impossible for a corporation to conspire with these persons, as long as they are acting exclusively within the scope of their employment. See Tynan v General Motors Corp., 591 A.2d 1024, 1032 (N.J. Super. Ct. App. Div. 1991), rev'd in part on other grounds, 127 N.J. 269 (1992) (citing Exxon Corporation v. Wagner, 154 N.J. Super. 538, 545 (App. Div. 1977)); Cromley v. Board of Education of Lockport Township High School Dist. No. 205, 699 F. Supp. 1283, 1291-92 (N.D. Ill. 1988); Wolf v. City of Chicago Heights, 828 F. Supp. 520, 524 (N.D. Ill. 1993); Selman, 697 F. Supp. at 238; Hebron Public School District v U.S. Gypsum, 690 F. Supp. 866 (D.N.D. 1988), aff'd, 953 F.2d 398 (8th Cir. 1992). Nor can individual agents, officers, or employees of a corporation, acting in their representative capacities, conspire among themselves. Rutherfoord v Presbyterian-University Hospital, 417 Pa. Super. 316 (1992). This Court notes, however, that a conspiracy is possible between a corporation and its agents, officers, or employees where they were acting as *individuals,* rather than representatives of the corporation. See Selman, 697 F. Supp. at 239.

Here, Plaintiffs allege that the individual Defendants conspired among themselves, acting as "principals, agents, officers, management, control persons, and/or other employees." (Compl., Seventh Count, ¶ 2.) Plaintiffs have failed to allege that any of the Defendants were acting outside of their official capacity when they engaged in the alleged conduct. Defendants, acting as agents and employees of West Orange, cannot conspire among themselves. Tynan, 591 A.2d at 1032. Consequently, Plaintiffs have failed to allege that two or more "persons" acted in concert to commit an unlawful act. Accordingly, Defendants' motion to dismiss Plaintiffs' civil

31

conspiracy claim is granted.

### 7.  *Estoppel (Count Nine)*

"Although the doctrine of equitable estoppel is rarely invoked against a governmental entity, this Court has long held that the prevention of manifest injustice provides an exception to the general rule."  Casamasino v. City of Jersey City, 158 N.J. 333, 354 (1999) (citing County of Morris v. Fauver, 153 N.J. 80, 104 (1998); Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954)). Assuming that Plaintiffs can demonstrate a "manifest injustice," in order to assert a claim for equitable estoppel, Plaintiffs must allege that Defendants "engaged in conduct, either intentionally or under circumstances that induced reliance, and that [Plaintiffs] acted or changed [their] position to [their] detriment."  Aqua Beach Condominium Ass'n v. Department of Community Affairs, Bureau of Homeowner Protection, New Home Warranty Program, 186 N.J. 5, 20 (2006) (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003) (citing Miller v. Miller, 97 N.J. 154, 163 (1984))).

Defendants move to dismiss Plaintiffs' cause of action for equitable estoppel on the grounds that Plaintiffs (1) have no legal right or entitlement to proceed with construction that fails to comply with the plans presented to, and approved by, the Planning Board; and (2) "any permits obtained by Plaintiffs were null and void, and neither issued or relied on in good faith." (Defs.' Br. at 35.)  This court finds Defendants' arguments unavailing.  Defendants argue about what the proofs ultimately produced will show, rather than focusing on any deficiencies in Plaintiffs' allegations.

Plaintiffs allege that their "plans were approved and permits were issued in good faith by public entities/officials acting within the ambit of their duty," and that they "relied upon said

approvals and permits in good faith" to their detriment in continuing to develop and put money into the Property.  (Compl., Ninth Count, ¶¶ 2-3.)  These allegations suffice to state a claim for equitable estoppel.  See Aqua Beach, 186 N.J. at 20.  This Court denies Defendants' motion to dismiss Plaintiffs' equitable estoppel claim, pursuant to Rule 12(b)(6).[16]

### F.   Defendants' Motion For A More Definite Statement Under Rule 12(e)

Under Rule 12(e), a defendant may move for a more definite statement "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  FED. R. CIV. P. 12(e).  The Rule 12(e) "motion shall point out the defects complained of and the details desired."  Id.  "When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific . . . defense; [t]he Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief."  Thomas v. Independence Tp., 463 F.3d 285, 301 (3d Cir. 2006).

A defendant who makes a motion for a more definite statement under Rule 12(e) may join that motion with a Rule 12(b) motion to dismiss.  FED. R. CIV. P. 12(g) ("A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party").  "When presented with an appropriate Rule 12(e) motion for a more definite

---

[16]Count Eight of Plaintiffs' complaint asserts a cause of action for intentional infliction of emotional distress.  Defendants have made no general arguments warranting dismissal of this cause of action, and have failed to identify any specific deficiencies in Plaintiffs' complaint regarding this cause of action.  Defendants have not met their burden, and this Court will not dismiss Plaintiffs' emotional distress claim.  See Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) ("The defendant bears the burden of showing that no claim has been presented").

statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief." Thomas, 463 F.3d at 301.

Defendants argue that in the event that this Court determines that any of the counts set forth in the Complaint should not be dismissed for failure to state a claim upon which relief may be granted, this Court should order Plaintiffs to proffer more specific factual allegations because the Complaint is "both vague and ambiguous." Defendants specifically contend that Plaintiffs have failed to define the individual parties and their respective interests in the litigation, or allege specific factual support for a single claim in their ten-count Complaint. Defendants also contend that Plaintiffs set forth numerous irrelevant inflammatory comments about Defendant Trenk.[17]

This Court finds that the claims which have not been dismissed, pursuant to Rule 12(b)(6), are sufficiently alleged such that Defendants can reasonably frame a responsive pleading. As Defendants' motion itself demonstrates, Defendants clearly understand the factual allegations underlying Plaintiffs' claims, and have alleged factual reasons why they should not be held liable for each count. Defendants, as the movants, carry the burden of pointing out the "specific defects complained of and the details desired." Fed. R. Civ. P. 12(e). Through their general admonition that the Complaint is vague and ambiguous in failing to allege specific factual support for a single claim" (Defs.' Br. at 38-39), Defendants fail to meet their burden.

This Court also notes that there is no authority supporting the proposition that the

---

[17]Although Defendants complain that irrelevant inflammatory comments were directed toward Defendant Trenk, they have not made a motion to strike the allegedly inflammatory language. Therefore, there is no need for this Court to address whether such language should be stricken.

inclusion of allegedly inflammatory remarks in a Complaint justifies an order for a more definite statement, pursuant to Rule 12(e).  For these reasons, this Court denies Defendants' motion for a more definite statement.

## IV.  CONCLUSION

For the reasons stated above, this Court grants in part and denies in part Defendants' motion to dismiss Plaintiffs' Complaint, and denies Defendants' motion for a more definite statement.


Dated: December 19, 2006                              s/ Joseph A. Greenaway, Jr.
                                                    JOSEPH A. GREENAWAY, JR., U.S.D.J.

35