**McManimon & Scotland, L.L.C. (WN0548)**
**One Riverfront Plaza, Fourth Floor**
**Newark, New Jersey 07102**
**(973)622-1800**
**Attorneys for Defendants**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY- NEWARK
CIVIL ACTION NO.:2:06-cv-14409(JAG)

| | |
|---|---|
| MARJAC, L.L.C., a New Jersey Limited Liability Company; DJF REALTY, INC., a New Jersey Corporation; MARIO LAVECCHIA; and JACK FIORENZA, JR. | : : : : : |
| Plaintiffs, | : : : |
| v. | : : |
| RICHARD TRENK- Township Attorney; BOOKER, RABINOWITZ, TRENK, LUBETKIN, TULLY, DIPASQUALE & WEBSTER, P.C.; PLANNING BOARD FOR THE TOWNSHIP OF WEST ORANGE; MAYOR AND COUNCIL FOR THE TOWNSHIP OF WEST ORANGE; MAYOR JOHN MCKEON SUSAN BORG, Planning Board Director for the West Orange Building Department; RUSSELL DESANTIS, Building Sub-Code Official for the West Orange Health Department; JAMES MONTGOMERY, Health Inspector and JOHN DOES A-Z. | : : : : : : : : : : : : : : : |
| Defendants. | : |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On the Brief:

William W. Northgrave
Jaime R. Placek

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .............................................ii

PRELIMINARY STATEMENT ............................................1

STATEMENT OF FACTS ...............................................5

LEGAL ARGUMENT ..................................................10

POINT I    PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM (THIRD
           COUNT) MUST BE DISMISSED WITH PREJUDICE ............13

      A.   Plaintiff Fails to Establish an Implied or Explicit
           Custom, Practice or Policy Which Deprived Plaintiffs
           Of Due Process ....................................13

      B.   Plaintiffs' Substantive Due Process Claim Further
           Fails As A Matter Of Law As Any Alleged Damage Was
           Caused By Plaintiffs' Own Actions In Refusing To
           Return To The Planning Board ......................19

POINT II   PLAINTIFFS' STATE CIVIL RIGHTS CLAIM (*N.J.S.A.*
           10:6-2(c)) MUST BE DISMISSED WITH PREJUDICE
           (FOURTH COUNT) ....................................22

POINT III  PLAINTIFFS FAIL TO PROVIDE ANY PROOF SUPPORTING A
           CLAIM FOR RACKETEERING UNDER NEW JERSEY STATE
           STATUTE (TENTH COUNT) .............................22

POINT IV   THE REMAINING COUNTS OF PLAINTIFFS' COMPLAINT
           MUST BE DISMISSED, WITH PREJUDICE .................26

      A.   Tortious Interference With Economic
           Advantage/Contractual Relations (First And Second
           Counts) ...........................................27

      B.   Breach Of Fiduciary Duty (Fifth Count) ...........32

      C.   Estoppel (Ninth Count) ...........................34

CONCLUSION ......................................................40

i

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 *U.S.* 40 (1999) .............................................14

*Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242(1986) ...........11

*Andrews v. City of Philadelphia*,
895 *F.2d* 1469 (3d Cir. 1990) ..................................15

*Aqua Beach Condominium Association v. Department of Community
Affairs, Bureau of Homeowner Protection, New Home Warranty
Program*, 186 *N.J.* 5 (2006) ...................................34

*Bennet v. City of Slidell*, 728 *F.2d* 762 (5ᵗʰ Cir. 1984) ........17

*Bielevicz v. Dubinon*, 915 *F.2d* 845 (3d Cir. 1990) .............17

*Carpet Group International v. Oriental Rug Importers
Association*, 256 *F. Supp. 2d* 249 (D.N.J. 2003) ................27

*Casamasino v. City of Jersey City*, 158 *N.J.* 333 (1999) ........35

*Celotex Corp. v. Catrett*, 477 *U.S.* 317 (1986) .................12

*In re CITX Corp.*, 448 *F.3d* 672(3d Cir. 2006) .................11

*City of Oklahoma City v. Tuttle*, 471 *U.S.* 808 (1985) ..........16

*Clark v. Buchko*, 936 *F.Supp.* 212 (D.N.J. 1996) ................15

*Cleveland Board of Education v. Loudermill*,
470 *U.S.* 532 (1985) ...........................................13

*Coast Cities Truck Sales, Inc. v. Navistar International
Transportation Com.*, 912 *F.Supp.* 747 (D.N.J. 1995) .......... 27,28

*Collins v. Harker Heights*, 503 *U.S.* 115 (1992) ................18

*County of Sacramento v. Lewis*, 523 *U.S.* 833(1998) .............18

## TABLE OF AUTHORITIES
### (Cont.)

**CASES**                                                  **PAGE**

*Deer-Glen Estates v. Board of Adjustment,*
39 *N.J. Super.* 380 (App. Div. 1956) ............33, 36, 37, 38, 39

*Driscoll v. Burlington-Bristol Bridge Co.,*
10 *N.J. Super.* 545 (Ch. Div. 1950) .............................. 33

*East Penn Station, Inc., v. Grinnell Haulers, Inc.,*
294 *N.J. Super.* 158 (App. Div. 1996) ........................ 29, 30

*Eichenlaub v. Township of Indiana,*
385 *F.3d* 274 (3d Cir. 2004) ..................................... 19

*Farris v. County of Camden,* et al.,
61 *F. Supp. 2d* 307 (D.N.J. 1999) ........................... 35, 37

*Flatford v. City of Monroe,* 794 *F. Supp.* 227
(E.D. Mich. 1992) ............................................... 16

*Frankel v. C. Burwell, Inc.,* 94 *N.J. Super.* 53
(Law Div. 1967) ............................................... 37

*Graham v. M.S. Connor,* 490 *U.S.* 386 (1989) ..................... 14

*Henschke v. Borough of Clayton,* 251 *N.J. Super.* 393
(App. Div. 1991) ............................................... 17

*Hilliard v. New Jersey Army National Guard,*
527 *F.Supp.* 405 (D.N.J. 1981) ................................. 17

*Hilton Acres v. Klein,* 35 *N.J.* 570 (1961) ...................... 38

*Huggins v. Teamsters Local,* 312 *F. Supp.* 148
(E.D. Pa. 1984) ............................................... 12

*Interchange State Bank v. Veglia,* 286 *N.J. Super* 164
(App. Div. 2003), *certif. denied,* 144 *N.J.* 377 (1996) .......... 23

*Katz v. Aetna Cas. & Sur. Co.,* 972 *F.2d* 53
(3d Cir. 1992) ............................................... 12

*Kelly v. Borough of Sayreville,* 107 *F.3d* 1073
(3d Cir. 1997) ........................................... 14, 21

**TABLE OF AUTHORITIES**
(Cont.)

CASES                                                                    PAGE

*Kneipp v. Tedder*, 95 *F.3d* 1119 (3d Cir. 1996) .................. 15

*Korea Express USA, Inc. v. K.K.D. Imports, Inc.*,
2002 WL 31954077 4 (D.N.J. 2002) ......................... 11, 12

*Lizak v. Faria*, 96 *N.J.* 482 (1984) ......................... 34

*Losch v. Borough of Parkesburt, P.A.*, 736 *F.2d* 903
(3rd Cir. 1984) ......................................... 16, 17

*MacDougall v. Weichert*, 144 *N.J.* 380 (1996) ........ 27, 28, 29, 31

*Mark v. Borough of Hatboro*, 51 *F.3d* 1141 (3d Cir. 1995) ........ 14

*Monell v. Dept. of Soc. Serv. of the City of New York*,
436 *U.S.* 658 (1978) ................................. 14, 15, 17

*Monroe v. City of Asbury Park*, 40 *N.J.* 457 (1963) ............. 35

*Monroe v. Pape*, 365 *U.S.* 167 (1961) ......................... 16

*National State Bank v. Federal Reserve Bank of New York*,
979 *F.2d.* 1579(3d Cir. 1992) ............................ 11

*Palisades Properties, Inc. v. Brunetti*,
44 *N.J.* 117 (1965) .................................... 35, 36

*Pembauer v. Cincinnati,* 475 *U.S.* 469(1986) .............. 16, 17

*Plemmons v. New Jersey Auto. Full Ins. Underwriting
Ass'n,* 263 *N.J. Super.* 151 (App. Div. 1993) ................ 35

*Polk County v. Dodson*, 454 *U.S.* 312 (1981) ................. 17

*Popow v. City of Margate*, 476 *F. Supp.* 1237 (1979) ........... 14

*Printing Mart-Morristown v. Sharp*,
116 *N.J.* 739(1989) .................................... 31

**TABLE OF AUTHORITIES**
(Cont.)

**CASES**                                                          **PAGE**

*Pressley v. Township of Hillsborough,*
37 *N.J. Super.* 486 (App. Div. 1955) ........................ 32, 33

*Rizzo v. Goode*, 423 *U.S.* 362 (1976) ........................... 14

*Robin Construction Co. v. United States,*
345 *F.2d.* 610 (3d Cir. 1965) .................................. 12

*Rodin Properties-Shore Mall v. Cushman & Wakefield,*
49 *F.Supp.2d* 728 (D.N.J. 1999) ............................ 27, 28

*Ross v. Meagan,* 638 *F.2d* 650 (3d Cir. 1981) .................... 17

*State v. Ball*, 141 *N.J.* 142 (1995) ............................ 23

*Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.,*
357 *F. Supp. 2d* 788 (D.N.J. 2005) .............................. 28

*United Artists Theatre Circuit, Inc. v. Township of Warrington,*
316 *F.3d* 392 (3d Cir. 2003) .................................... 18

*Universal Holding Co. v. North Bergen Township,*
55 *N.J. Super.* 103 (App. Div. 1959) ........................... 38

*Watkins v. Nabisco Biscuit Co.,*
224 *F. Supp.* 2d 852 (D.N.J. 2002) .............................. 12

**RULES**

*Fed.R.Civ.P.* 56(c) ....................................... 10, 11

**STATUTES**

18 *U.S.C.* § 245(b)(1)(B) ...................................... 25

18 *U.S.C.* § 1951 .............................................. 25

42 *U.S.C.* § 1983 .................................. 13, 14, 17, 18

*N.J.A.C.* 5:23-2.14(a) .......................................... 4

*N.J.A.C.* 5:23-2.15 ............................................ 20

## TABLE OF AUTHORITIES
### (Cont.)

**STATUTES**                                                                                     **PAGE**

*N.J.A.C.* 5:23-2.16(j)(2) ........................................ 20

*N.J.S.A.* 2C:41-2 ................................................ 22

*N.J.S.A.* 10:6-2(c) .............................................. 22

*N.J.S.A.* 40:55D-1 ............................................... 5

*N.J.S.A.* 40:55D-7 ............................................... 33

## PRELIMINARY STATEMENT

Plaintiffs here seek relief from the Township of West Orange because the Township and subsequently the Department of Community Affairs ("DCA") issued stop construction orders against improvements being constructed at 466 Prospect Avenue in West Orange (the "Property"). The stop construction order was issued in 2004 because Plaintiffs exceeded the height, width and capacity of the building as approved by the Planning Board. Plaintiffs MARJAC, L.L.C. and DJF Realty, Inc. have common owners (Plaintiffs Mario LaVecchia and Jack Fiorenza, Jr.) (hereinafter, collectively "Plaintiffs") and are the owners respectively of the real estate and liquor license located at 466 Prospect Avenue, in the Township of West Orange ("Township").

The Complaint here is the latest of five (5) Plaintiffs filed concerning the Property: 1) Superior Court of New Jersey, Docket No. ESX-L-5268-04; 2) Superior Court of New Jersey, Docket No. ESX-L-2759-05; 3) Superior Court of New Jersey, Docket No. ESX-L-8573-05; 4) State of New Jersey Office of Administrative Law, Docket No. CAF09333-06; and 5) this action (filed in the Superior Court of New Jersey by Plaintiffs and removed by Defendants to this Court).

Following a special meeting conducted in October of 2002, the Planning Board for the Township of West Orange ("Planning

Board") granted conditional approval of Plaintiffs' preliminary and final site plan application, along with certain variances requested by Plaintiffs to construct improvements at 466 Prospect Avenue, West Orange, New Jersey (the "Project"). The building approved in that application was subject to specific conditions, including establishing a sewer connection for the property and submitting executed parking agreements with other nearby landowners to provide parking sufficient to support the use. That Plaintiffs would build the Project consistent with the plans as presented in their application to the Planning Board was a given, of course.

Approximately nineteen (19) months later, the Township learned that the Project as built exceeded the footprint and building envelope of the building approved, in addition to numerous other violations of the approvals. Instead of fixing the problem when the Township's stop construction order was issued (which stop construction order has been in place from DCA since July, 2004) Plaintiffs filed the first of the five suits discussed herein.

Plaintiffs' cavalier disregard of the Township's authority to insist on a building constructed within the envelope and footprint approved by the Township and consistent with the approved architectural plans that Plaintiffs <u>drafted</u> and

2

presented has been and continues to be the sole cause of
Plaintiffs' inability to complete construction. Plaintiffs
(through counsel) indicated on no less than three (3) occasions
that amended site plan approval would be sought for the changes
to the building as constructed. On each occasion Plaintiffs,
instead of simply filing an application for approval, chose to
litigate, attempting to find a court that would usurp the
authority of the Township and the function of the Planning
Board, without giving the Planning Board the opportunity to
review and pass (up or down) on whether the structure as built
by Plaintiffs would receive approval.[1]

The building as constructed was in clear violation of the
original Planning Board resolution approving the preliminary and
final site plan and the request for variances. As a result, the
Township's construction official issued a stop construction
order on June 16, 2004. Plaintiff filed suit to contest that
stop construction order, which action was subsequently dismissed
when the Department of Community Affairs for the State of New

---

[1] Plaintiffs finally submitted a complete amended site plan
application in July 2008. The Planning Board is scheduled to
conduct a hearing concerning the application in October 2008.
The Planning Board initially scheduled the necessary hearing for
July 30, 2008 which was then rescheduled due to Plaintiffs'
failure to timely publish the necessary public hearing notice;
the next hearing on September 17, 2008 had to be adjourned due
to Plaintiffs' failure to properly notice all necessary property
owners.

Jersey ("DCA") assumed jurisdiction over the project.   After taking jurisdiction, DCA issued three (3) subsequent stop construction orders (July 30, 2004, December 9, 2004 and July 27, 2006).   As recognized by the initial July 30, 2004 stop construction order issued by DCA, the "[c]onstruction differs than that shown on submitted construction documents.   Work exceeds scope of construction permit N.J.A.C. 5:23-2.14(a)."

Instead of resolving their clear and unequivocal violations as found by DCA (a party that presumably does not bear the same animus these Defendants are alleged to because Plaintiffs have never sued DCA), Plaintiffs filed this action (against the advice of their own legal counsel), with the addition of personal attacks[2] on West Orange public officials, in an attempt to intimidate the Township and its officials.   If Plaintiffs had simply filed a completed amended site plan application in 2004 (or 2005, or 2006, or 2007) as requested by Defendants, they would have had the approvals sought or, in the worst case scenario, a denial of their application which would then have been reviewable in state court.   Plaintiffs' refusal to follow

---

[2] Plaintiffs set forth several *ad hominem* attacks in their Complaint, setting forth numerous irrelevant inflammatory flourishes (see Complaint "BRIEF OVERVIEW" pp.2-3, "BACKGROUND" ¶s7 and 9)(Certification of William W. Northgrave dated October 17, 2008, Ex. 1 (hereinafter, "WWN Cert. Ex. ___") – none of which Plaintiffs could support as the record established in this matter now shows.

the clear procedures in the Municipal Land Use Law (*N.J.S.A.* 40:55D-1 ("MLUL")) should not be countenanced by this Court and summary judgment should be granted in favor of Defendants and against Plaintiffs, dismissing the Complaint in its entirety with prejudice.

## STATEMENT OF FACTS

The filing of this complaint represents the fifth complaint Plaintiffs (or some combination thereof) have filed against Defendants (or some combination thereof) since July 2004. Defendant's Rule 56.1 Statement of Undisputed Material Facts ¶149 (hereinafter, "Statement of Facts ¶ __"). This complaint, and its predecessors, emanate from a stop construction order issued by the Township of West Orange on or about June 16, 2004 (the "stop construction order") relative to the construction of a restaurant/night club at 466 Prospect Avenue in the Township of West Orange. Statement of Facts ¶93 - 95.

On June 16, 2004, a construction official from the Township of West Orange was called to the site to perform certain inspections, during which he noticed that the building "as built" substantially exceeded the site plan approval that had been given for the Project. Statement of Facts ¶83. The building inspector contacted the Township's Planning Director, Defendant Susan Borg, who met the building inspector at the

5

site. Statement of Facts ¶s83 and 84.  Ms. Borg confirmed that
the project "as built" exceeded both the footprint and building
envelope as approved by the Planning Board in issuing its
approval.  Some of the violations of the Planning Board approval
included:

1.  an approximately three (3) foot encroachment extending
    approximately forty-two (42) feet on the southerly
    side of the building into the side yard setback;

2.  an HVAC unit installed in the southerly side yard
    setback beyond the encroachment discussed immediately
    above;

3.  an expansion in both size and use of the third floor
    of the structure;

4.  an expansion both in size and use for the basement of
    the building;

5.  the kitchen had never been submitted for approval by
    the Department of Health and yet was in the process of
    being constructed;

6.  installation of an approximately 20 foot by 3 foot
    exterior mechanical duct on the easterly elevation
    protruding about 18 inches from the building;

7.  a change in plans for the front entrance of the
    building, including a change in height posing a
    possible needed review by the zoning board; and

8.  failure to establish the sewer connection or provide
    the parking agreements testified to in Plaintiff's
    site plan application.

Statement of Facts ¶80.

    Shortly after the stop construction order was issued,
Plaintiffs filed the first in a series of five (5) actions

against Defendants herein.   Statement of Facts ¶s100 and 149.
That action was dismissed with the understanding that DCA would
take jurisdiction of construction of the project.   Statement of
Facts ¶108.   DCA issued its own stop construction order on July
30, 2004 noting that the building as built exceeded the
approvals granted by the Planning Board.   Statement of Facts
¶109.   Plaintiff has never filed suit against DCA.   Statement of
Facts ¶s12, 115 and 116.   There is a stop construction order in
place today issued by DCA. Statement of Facts ¶114.

Beginning in late 2004 or early 2005, Plaintiffs were
advised both by Defendants and by their own counsel that they
needed to file for an amended site plan approval based on the
substantial differences between the site plan approval they had
been granted and the building as built. Statement of Facts ¶s96-
99.   Plaintiff Jack Fiorenza acknowledged that substantial
changes to the building would require additional approvals.
Statement of Facts ¶81. No complete application was filed until
July 2008[3].   In fact, Plaintiff Mario LaVecchia confronted a
similar problem in a building he renovated in Millburn, New
Jersey.   Statement of Facts ¶s155-162.   In that case, Mr.
LaVecchia had also exceeded his approvals, was cited for and

---

[3] Plaintiffs filed an application in September 2005 that itemized
37 missing items (ranging from a telephone number — which took
two more letters to get — to the height of the redesigned
entranceway, which could require approval from the zoning board.

7

paid a fine for his violation of those approvals. Statement of Facts ¶s159 and 160. The same professionals used in that application were employed by Plaintiffs with regard to this application. Statement of Facts ¶162.

Plaintiffs make various colorful and in most instances incendiary allegations in their complaint. *See* Complaint, "BRIEF OVERVIEW" pp.2-3 and "BACKGROUND" ¶1 through 23 (WWN Cert. Ex. 1). (Plaintiffs offer no proof as to any of these allegations, as discussed at length herein.) One specific allegation that Plaintiffs make is that Defendants (through Defendant Borg) sent a "fallacious fax" to DCA on December 3, 2004 in attempt to continue the stop construction order against the project. Complaint "BACKGROUND" ¶14 (WWN Cert Ex.1). As borne out through discovery, that "fallacious fax" was in fact never "faxed" to DCA but was mailed by Defendant Borg, on or about December 3, 2004. Statement of Facts ¶s150-154. Importantly in the context of this action, the undisputed and irrefutable fact is that Ralph Ferguson of DCA did not receive that letter until on or about December 14, 2004. Statement of Facts ¶152. Mr. Ferguson indicated in his response thereto that to avoid "future delay" Ms. Borg should send the letter to a different address. Statement of Facts ¶153. Further, Mr. Ferguson questions Ms. Borg's authority to speak as to the

matters addressed in the allegedly "fallacious fax" and that DCA would take no action based on Ms. Borg's letter without further clarification as to her authority.   Statement of Facts ¶154. Most importantly, the action Plaintiffs complained of taken by DCA occurred on December 9, 2004, five days before DCA received the alleged "fallacious fax".   Statement of Facts ¶s93, 152 and 154.

When asked to produce any proof of any of the allegations in its Complaint, either in written discovery or during the depositions of Plaintiffs Jack Fiorenza or Mario LaVecchia or Mr. Fiorenza's brother Dominick J. Fiorenza, Plaintiffs can cite to nothing beyond their own conjecture and speculation. Statement of Facts ¶s39 and 42-154.   For example, Plaintiff Mario LaVecchia candidly admits he was speculating when he alleged that Defendants McKeon and/or Trenk profited financially as a result of Defendants' actions in this matter. Statement of Facts ¶71 and 72.   Despite ample opportunity to do so over three (3) days of depositions, Mr. LaVecchia could not even offer any conjecture as to how any Defendant in this matter could have benefited from the Township's alleged interference with the construction of the Project.   *See*, eg. Statement of Facts ¶s64, 71 and 72.

As set forth more fully herein, the undisputed facts in this matter indicate that Plaintiffs' project was stopped in June 2004 by Defendant, Township of West Orange, because Plaintiffs had exceeded the approvals as issued by the Planning Board. Statement of Facts ¶s80 and 93-96. Any protestation by Plaintiff to the contrary is simply frivolous. Other than filing no less than five (5) actions against the Township of West Orange, Plaintiffs took no action to amend their site plan approval so as to lift the stop construction order issued by DCA in July 2004 (which order remains in place today), finish the project and open their business. Statement of Facts ¶149. To the extent Plaintiffs have suffered any damage, it has been solely, completely and undeniably at their own hand. There are no facts Plaintiffs have produced or can produce to assert any liability whatsoever against any Defendant in this action.

## LEGAL ARGUMENT

Pursuant to *Fed.R.Civ.P.* 56(c), judgment shall be entered in favor of a party moving for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order "to survive summary judgment on his claim...[a

10

nonmovant] must present sufficient evidence to allow a reasonable jury to find in his favor." *In re CITX Corp.*, 448 *F.3d* 672, 677 (3d Cir. 2006).

As opined by the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 106 *S.Ct.* 2505, 91 *L.Ed.2d* 202 (1986), *Fed.R.Civ.P.* 56(c) "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-248 (emphasis in original). "A fact is 'material' only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is 'genuine' if the evidence is such that a reasonable fact-finder could return a verdict for the moving party." *Korea Express USA, Inc. v K.K.D. Imports, Inc.*, 2002 WL 31954077 at 4 (D.N.J. 2002), quoting *Anderson*, 477 *U.S.* at 252.

Defendants herein have "no obligation to produce evidence negating" Plaintiffs' case, but must merely "point to the lack of any evidence supporting" Plaintiffs' claims set forth in the Complaint. *National State Bank v. Federal Reserve Bank of New York*, 979 *F.2d* 1579, 1581 (3d Cir. 1992). Further, to defeat Defendants' motion for summary judgment, Plaintiffs "must present more than a mere scintilla of evidence in (their) favor

11

and cannot simply reassert factually unsupported allegations contained in [the complaint]." *Korea Express*, 2002 WL 31954077 at 4; *Watkins v. Nabisco Biscuit Co.*, 224 *F.Supp.2d* 852, 860 (D.N.J. 2002) (citations omitted). If a party opposing a motion for summary judgment fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial...there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 *F.2d* 53, 55 (3d Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 *U.S.* 317, 322-23 (1986).

"The Third Circuit has held that mere inferences, conjecture, speculation or suspicion are insufficient to establish a material fact upon which to base a denial of summary judgment." *Huggins v. Teamsters Local 312*, 585 *F. Supp.* 148, 150-51 (E.D. Pa. 1984) (citing *Robin Construction Co. v. United States*, 345 *F.2d* 610 (3d Cir. 1965). As demonstrated herein, following completion of all necessary discovery, as a matter of law Defendants are entitled to judgment as a matter of law and dismissal of Plaintiffs' Complaint in its entirety as to all Defendants with prejudice.

12

POINT I

**PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM (THIRD COUNT)
MUST BE DISMISSED WITH PREJUDICE**

**A.   Plaintiff Fails to Establish an Implied or Explicit
Custom, Practice or Policy Which Deprived Plaintiffs of
Due Process**

The Fourteenth Amendment's Due Process Clause proscribes the deprivation of life, liberty and property unless "constitutionally adequate procedures" are employed. *Cleveland Board of Education v. Loudermill*, 470 *U.S.* 532, 541 (1985). The Third Count of Plaintiffs' Complaint alleges Defendants acted under color of state law in an arbitrary, capricious, unreasonable and otherwise wrongful manner such that Plaintiffs were deprived of their Fourteenth (Substantive Due Process) Amendment Rights[4] in violation of 42 U.S.C. §1983. WWN Cert. Ex. 1. Plaintiffs contend Defendants deprived Plaintiffs' use of the Property, with Defendants' actions being based on and the result of personal and/or political animus. See, Complaint (WWN Cert. Ex.1).

42 *U.S.C.* §1983 in itself does not confer substantive rights – it merely provides a venue for vindicating federal

---

[4] This Court granted Defendants' Motion to Dismiss with respect to Plaintiffs' claims based on alleged violation of Fifth Amendment property rights, Fourteenth Amendment Equal Protection rights and violation of Plaintiffs' rights under the Commerce Clause, leaving only the alleged violation of Plaintiffs' Fourteenth Amendment Substantive Due Process rights. Opinion pp. 8 – 14 (Docket Index No. 9).

rights elsewhere conferred. *Graham v. M.S. Connor*, 490 *U.S.*
386, 393-394 (1989). "To establish a claim under 42 *U.S.C.*
§1983 [a Plaintiff] must demonstrate a violation of rights
secured by the Constitution or the laws of the United States and
that the alleged deprivation was committed by a person acting
under the color of state law." *Kelly v. Borough of Sayreville,*
107 *F.3d* 1073, 1077 (3rd Cir. 1997), quoting *Mark v. Borough of
Hatboro,* 51 *F.3d* 1141 (3rd Cir. 1995); *Am. Mfrs. Mut. Ins. Co. v.
Sullivan*, 526 *U.S.* 40 (1999).

In order to establish liability for damages pursuant to 42
*U.S.C.* §1983, a litigant must prove either: (a) official policy
or custom or practice which results in constitutional
violations; or (b) conduct by officials in authority evidencing
implicit authorization or approval or acquiescence in the
unconstitutional conduct. *Popow v. City of Margate*, 476 *F. Supp.*
1237 (1979) *citing, Monell v. Dept. of Soc. Serv. Of the City of
N.Y.*, 436 *U.S.* 658 (1978); *Rizzo v. Goode*, 423 *U.S.* 362 (1976).
It is only when "execution of a government's policy or custom,
whether made by its lawmakers or by those whose edicts or acts
may fairly be said to represent official policy, inflicts the
injury that the government as an entity is responsible under
Section 1983." *Id.* at 694.

14

The terms "official policy" and "custom" have been defined by the United States Supreme Court. In *Monell* the United States Supreme Court defined a municipal policy as a statement, ordinance, regulation, or official decision adopted and promulgated by that body's officers. *Clark v. Buchko*, 936 *F.Supp.* 212, 221 (D.N.J. 1996) (*citing Monell*, 436 *U.S.* at 690). The Supreme Court defined a custom or usage as "such practices of state officials [that are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id., quoting, Monell, supra.* 436 *U.S.* 691.

In *Andrews v. City of Philadelphia*, 895 *F.2d* 1469 (3rd Cir. 1990) the Third Circuit explained the distinction between "policy" and "custom" as follows:

> A government policy or custom can be established in two ways. Policy is made when a "decision maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law.

*Andrews*, 895 *F.2d* at 1480; *See also, Kneipp v. Tedder*, 95 F.3d 1119 (3d Cir. 1996). Furthermore, although a violation can be found through an informal custom that has not received formal approval through the body's official decision-making channels, one cannot infer a policy or custom from a lone isolated

15

incident of conduct. *Flatford v. City of Monroe*, 794 *F. Supp.* 227, 233 (E.D. Mich. 1992), *modified on other grounds* 17 *F.3d* 162 (6th Cir. 1994); *citing, City of Oklahoma City v. Tuttle*, 471 *U.S.* 808 (1985), *rehearing denied* 473 *U.S.* 925 (1985); *see* also, *Losch v. Borough of Parkesburt, P.A.*, 736 *F.2d* 903 (3d Cir. 1984); *Monroe v. Pape*, 365 *U.S.* 167 (1961).

Although there can be liability where a course of action is properly made by a government's authorized decision makers, municipal liability attaches *only* where the decision maker possesses final authority to establish municipal policy or custom with respect to the action ordered. *Pembauer v. Cincinnati*, 475 *U.S.* 469, 481 (1986).  "The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion . . . since the official must also be responsible for establishing final government policy respecting activity before the municipality can be held liable." *Pembauer, supra.*, 475 *U.S.* at 482-3.  Ultimately, "municipal liability under Section 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials

responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

Moreover, to impose liability against a public entity pursuant to 42 *U.S.C.* §1983, a plaintiff must establish a nexus between the public entity's policy and the constitutional violation, in that the official policy must be the "moving force of the constitutional violation." *Polk County v. Dodson*, 454 *U.S.* 312, 326 (1981); *citing, Monell*, 436 *U.S.* at 694). "A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch, supra.*, 736 *F.2d* at 910; *citing, Bennett v. City of Slidell*, 728 *F.2d* 762, 767 (5ᵗʰ Cir. 1984). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz v. Dubinon*, 915 *F.2d* 845, 850 (3ʳᵈ Cir. 1990).

Accordingly, Plaintiffs are required to set forth the specific policy or acts established by any Defendant herein which violated their constitutional rights. *Henschke v. Borough of Clayton*, 251 *N.J. Super.* 393, 401 (App. Div. 1991); *citing, Hilliard v. New Jersey Army National Guard*, 527 *F.Supp.* 405 (D.N.J. 1981); *Ross v. Meagan*, 638 *F.2d* 650 (3d Cir. 1981).

17

Discovery has confirmed that no such policy, custom, or practice has been identified or can be specified by Plaintiffs. See generally Statement of Facts, ¶s 16, 39, 42-77, 80-85, 88-91, 93-101 and 105-154.

Despite ample opportunity to do so, Plaintiffs cannot point to any conduct that supports a claim that any policy or custom exists, giving rise to damages pursuant to 42 *U.S.C.* §1983 as a matter of law. See, generally, Statement of Facts. Defendants here cannot be held liable with respect to Plaintiff's claim for damages for constitutional violations pursuant to 42 *U.S.C.* §1983 as Defendants did not have an official policy or custom or practice which deprived any Plaintiff of their constitutional rights.

Further, the United States Supreme Court has held that government action will only be found to have violated an individual's substantive due process rights when it "shocks the conscience." *Collins v. Harker Heights*, 503 *U.S.* 115, 128(1992); *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 *F.3d* 392, 399 (3d Cir. 2003). "'[O]nly the most egregious official conduct'" will be found to satisfy the "shocks the conscience" test. *United Artists*, 316 F.3d at 400 (quoting *County of Sacramento v. Lewis*, 523 *U.S.* 833(1998)).

18

As to Plaintiffs' allegation of disparate treatment based upon "stereotype relating to their Italian heritage", Plaintiffs admitted (albeit reluctantly) in sworn testimony they possessed no proof any disparate treatment based on their heritage and accordingly fail (miserably) in meeting the "stringent requirements needed to show a substantive due process violation."[5] *Eichenlaub v. Twp. of Indiana*, 385 *F.3d* 274, 286-287 (3d Cir. 2004). Statement of Facts ¶s39, 43, 45, 46, 47, 62 and 76.

Plaintiffs make conclusory allegations in the Complaint that their substantive due process rights have been violated as a result of animus (personal, political or otherwise) by Defendants against the Plaintiffs. When asked for proof of same, Plaintiffs failed to produce even a scintilla of evidence to establish that alleged animus. The Third Count must be dismissed.

**B.   Plaintiffs' Substantive Due Process Claim Further Fails As A Matter Of Law As Any Alleged Damage Was Caused By Plaintiffs' Own Actions In Refusing To Return To The Planning Board**

Because of the extensive violations of their site plan application (see Statement of Facts ¶80) Plaintiffs do not have the necessary approvals to continue construction. Plaintiffs

---

[5] Ironically, the only ethnic comments uttered in this matter are from the Complaint itself or from the testimony of Plaintiff Mario LaVecchia. Statement of Facts ¶s34, 35 and 92.

were repeatedly advised by their own counsel to seek amended
site plan approval (Statement of Facts, ¶s98, 99 and 119);
Plaintiff Mario LaVecchia agreed that additional Planning Board
approval was needed (Statement of Facts ¶97), yet Plaintiffs did
not file a complete application until July, 2008.  The Township
repeatedly requested (beginning immediately after the issuance
of the initial stop construction order in June 2004 (WWN Cert
Exs.5 and 6)) Plaintiffs return to the Planning Board for
amended site plan approval.   Statement of Facts ¶100.
Plaintiffs, rather than return to the Planning Board, made the
conscious decision to:   (i) file various complaints in the
Superior Court of New Jersey (Statement of Facts ¶149); (ii)
call the Mayor every day for a year (Statement of Facts ¶102);
and (iii) write numerous letters to the Township demanding
relief (Statement of Facts ¶103), yet they refused to pursue
that relief through the proper legal channels.

Pursuant to *N.J.A.C.* 5:23-2.15, an application for a
construction permit requires "[a] statement that all required
State, county and local prior approvals have been given... ."
*N.J.A.C.* 5:23-16(j)(2) requires the work conform to all prior
approvals as a condition for a construction permit to issue.
Plaintiffs' stubborn and inexplicable refusal to seek a remedy
in the normal course (which their counsel and Defendants both

20

urged (Statement of Facts ¶s 96, 98 and 119)) does not in any fashion support a claim for a civil rights violation. Accordingly, Plaintiffs' claim fails as a matter of law.

The Third Circuit dealt with an analogous situation in *Kelly v. Borough of Sayreville*, 107 *F.3d* 1073 (1997). Plaintiff in *Kelly*, a police officer, alleged that certain disciplinary actions had been instituted against him by Defendant Sayreville. *Id*. at 1077. The Third Circuit found in *Kelly* that while Plaintiff had a property interest protected by the Fourteenth Amendment (his position as a police officer), Plaintiff was never "suspended, removed, fined or reduced...in rank and...suffered no loss of compensation by reason..." of the disciplinary action against him, resulting in dismissal of the claim because he suffered no harm inflicted by the Borough. *Id*. Assuming Plaintiffs suffered any damages here, they cannot show that Defendants took action to cause that harm; nothing, except their own inexplicable behavior in refusing to return to the Planning Board, is the cause of any damage they allegedly suffered.

Plaintiffs therefore cannot, as a matter of law, sustain their claim based upon a violation of substantive due process rights. Therefore, the Third Count of Plaintiffs' Complaint should be dismissed with prejudice.

21

## POINT II

### PLAINTIFFS' STATE CIVIL RIGHTS CLAIM (*N.J.S.A.* 10:6-2(C)) MUST BE DISMISSED WITH PREJUDICE (FOURTH COUNT)

The Fourth Count of the Complaint alleges a claim under *N.J.S.A.* 10:6-2(c) (New Jersey Civil Rights Act), which provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person action under color of law, may bring a civil action for damages...or other appropriate relief.

As set forth in Point I, Plaintiffs' claim is grounded in an alleged violation of Plaintiffs' substantive due process rights. For the reasons set forth in Point I, this state civil rights claim must also fail.

## POINT III

### PLAINTIFFS FAIL TO PROVIDE ANY PROOF SUPPORTING A CLAIM FOR RACKETEERING UNDER NEW JERSEY STATE STATUTE (TENTH COUNT)

Plaintiffs allege in the Tenth Count of their Complaint violations of *N.J.S.A.* 2C:41-2 ("RICO"). *N.J.S.A.* 2C:41-2:

> makes it a crime for a person to be employed by or associated with "an enterprise" and to engage or participate or become involved in the business of the enterprise 'through a pattern of racketeering activity.'... The Act also makes it a crime for a person to conspire to engage in such conduct.

22

*State v. Ball*, 141 *N.J.* 142, 151 (1995).   A "pattern of

racketeering activity" requires:

> (1)  Engaging in at least two incidents of
> racketeering conduct...and (2) A showing that the
> incidents of racketeering activity embrace
> criminal conduct that has either the same or
> similar purposes, results, participants or
> victims or methods of commission or are otherwise
> interrelated by distinguishing characteristics
> and are not isolated incidents.

*Id.*

The general allegations Plaintiffs assert in their

Complaint, as well as the totality of facts brought forth

through discovery, fail to meet the requirements of "pattern of

racketeering activity."  Statement of Facts ¶s16, 39, 42-77, 80-

85, 87-91, 93-101 and 105-154.  Plaintiffs fail to set forth in

any documents or testimony supporting participation by

Defendants here in even a single incident of "racketeering

conduct" with regard to any other Defendant.  *Id.*   Furthermore,

all allegations in the Complaint relate to a single real estate

development project which Plaintiffs have been unable to finish

to date as a result of their own conduct.   *Id.; See generally*,

Complaint (WWN Cert. Ex. 1).

Plaintiffs' RICO claims also fail to meet the "proximate

cause" requirement with respect to damages.   *Interchange State

Bank v. Veglia*, 286 *N.J. Super* 164, 178 (App. Div. 2003),

23

*certif. denied*, 144 *N.J.* 377 (1996). As discussed herein, the only cause of any alleged damages Plaintiffs suffer is from their own refusal to return to the Planning Board for final resolution of all issues concerning the subject property.

Finally, Plaintiffs rely on a single allegation of wire fraud in support of their RICO claims: the December 3, 2004 letter from Defendant Borg to DCA concerning the Property.[6] While Plaintiffs refer to this letter as a "fallacious fax" (Complaint "BACKGROUND" ¶14 (WWN Cert. Ex.1)), the actual document, and the response of DCA thereto, speak for themselves (Statement of Facts ¶150-154): (i) Plaintiffs failed to bring forward any evidence confirming the correspondence was in fact sent via facsimile as alleged (as required to prove wire fraud); (ii) the December 9, 2004 stop construction order itself clearly states it was issued by the DCA for Plaintiffs' failure to obtain a construction permit[7] and necessary inspections – no reference is made to the December 3, 2004 letter of Ms. Borg or to the substance thereof (Statement of Facts ¶112; WWN Cert. Ex. 11); and (iii) Plaintiffs did not and cannot produce any evidence showing that DCA relied on or acted in any manner in response to the subject correspondence. In fact, the opposite

---

[6] Opinion at p. 21 (Docket Index No. 9).
[7] DCA also ordered Plaintiffs to pay a $2,000 penalty for this failure to obtain a construction permit. Statement of Facts ¶111.

24

is true:   DCA issued the stop construction order before it received the alleged "fallacious fax" (Statement of Facts ¶s112 and 152); when DCA did respond, it questioned the Township's authority to speak, indicating it was taking action independent of the Township's request (Statement of Facts ¶154). Statement of Facts ¶152 - ¶154.

Ms. Borg – who authored the letter – testified without question it was forwarded via regular mail and not sent via facsimile. Statement of Facts ¶151. Ms. Borg's leter to the DCA bears a stamp confirming receipt by the DCA on December 14, 2004 – five (5) days after the issuance of the subject stop construction order.   Statement of Facts ¶152. Further, the December 15, 2004 responding correspondence of DCA confirms DCA did not receive the correspondence from Defendant Borg before it issued the December 9, 2004 Stop Construction Order.  Statement of Facts ¶153 and ¶154. Accordingly, Plaintiffs' claims based on RICO, to the extent they rely on this "fallacious fax", fail and must be dismissed with prejudice.

To the extent Plaintiffs' State RICO claims are based on extortion, Hobbs Act (18 *U.S.C.* § 1951) and/or 18 *U.S.C.* § 245(b)(1)(B), these claims also require dismissal.   Plaintiff Jack Fiorenza testified he was not aware of any attempted extortion of him or any other Plaintiff.   Statement of Facts,

25

¶44 and ¶62.   Plaintiff LaVecchia alleges Defendant Trenk

engaged in extortion; but could provide no facts to support that

allegation and admits that he had no idea what, if any, alleged

benefit was being sought from that extortion.   Statement of

Facts ¶64.   For all the foregoing reasons, Count Ten of

Plaintiffs' Complaint must be dismissed.

<div align="center">

**POINT IV**

**THE REMAINING COUNTS OF PLAINTIFFS' COMPLAINT
MUST BE DISMISSED, WITH PREJUDICE**

</div>

This Court previously dismissed the Sixth (Legal

Malpractice) and Seventh (Civil Conspiracy) Counts of

Plaintiffs' Complaint. *See* Opinion and Order entered December

19, 2006 by the Honorable Joseph A. Greenaway, Jr., U.S.D.J.

(Docket Index Nos. 9 and 10).   The Eight Count (Intentional

Infliction of Emotional Distress) was dismissed by Consent Order

executed by counsel for Plaintiffs and Defendants.   Therefore,

in addition to those Counts addressed above, the only remaining

Counts to be addressed are: **First** (Tortious Interference with

Prospective Economic Advantage), **Second** (Tortious Interference

with Contractual Relations), **Fifth** (Breach of Fiduciary Duty)

and **Ninth** (Estoppel).   As more fully discussed below, each Count

should be dismissed with prejudice as to all Defendants.

<div align="center">

26

</div>

**A.   Tortious Interference With Economic Advantage/Contractual Relations (First And Second Counts)**

A claim of tortious interference with prospective economic advantage requires "inducing a third person not to continue a prospective relation." *MacDougall v. Weichert,* 144 *N.J.* 380, 404 (1996).   In order to assert a claim for tortious interference a plaintiff must demonstrate:

> (1) that plaintiff had a reasonable expectation of an economic benefit or advantage; (2) that defendant knew of plaintiff's expectancy; (3) that defendant wrongfully and intentionally interfered with this expectancy; (4) a reasonable probability that, but for defendant's wrongful interference, plaintiff would have realized the economic benefit; and (5) that plaintiff was injured as a result of defendant's conduct.

*Carpet Group International v. Oriental Rug Importers Association,* 256 *F.Supp.2d* 249, 288 (D.N.J. 2003) *citing Coast Cities Truck Sales, Inc. v. Navistar International Transportation Com.,* 912 *F. Supp.* 747, 771 (D.N.J. 1995).

Proof of the above elements are also required to plead a cause of action for intentional interference with a contract however, rather than prove their reasonable expectation and Defendants' knowledge of said expectation, Plaintiffs must prove the existence of a contract and intentional interference therewith. *Rodin Properties-Shore Mall v. Cushman & Wakefield,*

27

49 *F. Supp.2d* 728 (D.N.J. 1999). This Court has clarified the requirement that malice be present in both torts:

> [t]he gravamen of a claim for tortious interference is that the defendant's conduct was wrongful, thus requiring plaintiff to establish that defendant acted with malice. Malice is the intentional doing of a wrongful act without justification or excuse.

*Coast Cities,* 912 *F. Supp.* at 772; *Rodin Properties,* 49 *F. Supp.2d* at 737 (as applied to tortious interference with a contract); *Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.,* 357 *F. Supp.2d* 788 (D.N.J. 2005) (as applied to tortious interference with a contract).

In *MacDougall,* a realtor, who also served as a municipal councilman, sued his employer after he was terminated. *MacDougall,* 144 *N.J.* at 386. Plaintiff, in his role as councilman, voted in favor of an ordinance that was opposed by a major client of his employer. *Id.* It was not disputed that Mr. MacDougall was terminated as a result of his vote. *Id.* Mr. MacDougall sued the client for interference with a prospective economic advantage. *Id.* at 404. The Supreme Court of New Jersey examined the client's actions to determine whether the interference was "without justification or excuse, and thus malicious." *Id.* The Court went on to state, "that inquiry must focus on the propriety of the defendant's actions in the context of the case presented." *Id.* It is incumbent upon the plaintiff

28

to prove the absence of justification. *Id.* The Court remanded the claim, directing the lower court to determine whether there existed a "sufficiently reasonable relationship between [the client's] conduct and his legitimate business interests." *Id.* at 405. If there was a reasonable relationship, no malice would exist and the claim would be dismissed. *Id.*

In *East Penn Station, Inc., v. Grinnell Haulers, Inc.*, 294 *N.J. Super.* 158 (App. Div. 1996) plaintiff contracted with Sussex County to provide waste removal services. Plaintiff's contract was awarded on an emergency basis and did not go through public bidding. *Id.* at 162-163. The project had two phases. To complete the second phase, plaintiff was required to obtain a license from the Department of Environmental Protection. *Id.* at 163. Defendant informed the county that the plaintiff would not be able to obtain the required license, and plaintiff could not in fact obtain the proper paperwork. *Id.* at 164. Plaintiff attempted to assign its rights and the county refused to consent, indicating that without a license the contract was voidable and not assignable. *Id.*

In *East Penn Station, Inc.*, plaintiff filed suit against defendant alleging that the defendant tortiously interfered with plaintiff's contract by informing the county of plaintiff's ineligibility to receive the proper licenses. *Id.* Plaintiff

further alleged that defendant sent letters to DEP in order to sabotage plaintiff's application for a license. *Id.* The trial court ruled in favor of the plaintiff. *Id.* On appeal, the Appellate Division reversed the trial court and dismissed Plaintiff's action. *Id.*

The Appellate Division found that the defendant did not act tortiously by informing both the DEP and the county of information that would be detrimental to plaintiff's pursuit of a license and maintenance of its contract with the county. *Id.* The Appellate Division concluded plaintiff could not show malice as the defendant merely provided "truthful information to one of the contracting parties." *Id.* at 180. Plaintiff failed to meet the requirements to maintain its contract and as a result, the termination of the contract was the fault of the plaintiff. *Id.*

Plaintiffs make a number of allegations in the Complaint, but deliver nothing when pushed for proof of the alleged wrongdoing by any Defendant here. They offer no proof of derogatory statements uttered by any Defendant here, no proof a Defendant engaged in any wrongful or illegal conduct engaged in by any Defendant, nor any motive why any Defendant would so act. Statement of Facts ¶s16, 39, 42-77, 80-85, 87-91, 93-101 and 105-154. Plaintiffs' project was failing because of their intransigence; instead of seeking a solution, they tried to

30

create the excuse that the Township was the cause of their failure.

The Township repeatedly requested Plaintiffs submit a complete amended site plan application so that the appropriate board can then review and take the necessary appropriate action. Statement of Facts ¶s80 and 100. Plaintiffs (and their counsel) recognized the requirement to submit a complete amended site plan application but inexplicably failed to do so. Statement of Facts ¶s97-100 and 119. Plaintiffs' failure to amend and supplement their amended site plan application (despite repeated requests from the Township and direction from their own legal counsel to do so), requires that their claims for tortious interference with prospective economic advantage and tortious interference with contractual relations be dismissed.

Further, Plaintiffs cannot establish the "malice" requirement essential to both tortious interference claims. As stated in *MacDougall,* the court must review the actions "in the context of the case presented" to determine if they are "'without justification or excuse,' and thus malicious." *MacDougall,* 144 *N.J.* at 404 (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.,* 116 *N.J.* 739, 756 (1989)). The Township has repeatedly justified its actions in correspondence with Plaintiffs and in defending numerous lawsuits. Statement of

31

Facts ¶80.   As Plaintiffs have acknowledged their failure to submit an amended completed site plan application, it is the Plaintiffs themselves that hindered their own prospective economic advantage and contract.   Counts One and Two of the Complaint must be dismissed.

**B.   Breach Of Fiduciary Duty (Fifth Count)**

Plaintiffs assert that Defendants violated the fiduciary duty owed under Defendants' "inescapable obligation to serve the public, including taxpayers such as Plaintiffs... ."   Complaint ¶3 p. 15 (WWN Cert. Ex. 1).   Defendants agree that "[p]ublic office is a public trust, created in the interest and for the benefit of the people.   Public officers stand in a fiduciary relationship to the people whom they have been elected or appointed to serve."   *Pressley v. Township of Hillsborough,* 37 *N.J. Super.* 486, 492 (App. Div. 1955).   The Superior Court of New Jersey, Appellate Division, set forth the duty owed by a public official:

> As fiduciaries and trustees of the public weal they (municipal officers) are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity.

32

*Pressley*, 37 *N.J. Super.* at 491-492 *citing Driscoll v. Burlington-Bristol Bridge Co.,* 10 *N.J. Super.* 545, 474-475 (Ch. Div. 1950).

Defendants here served the public by insisting on compliance with procedures to which its citizens must conform to construct and modify buildings within the Township.  *N.J.S.A.* 40:55D-7 allows municipalities to request any "information that may be reasonably required in order to make an informed determination" by the planning board.   The Township simply requested Plaintiffs submit a complete amended site plan application so that the Planning Board would be in a position to make an informed determination with regard to Plaintiffs' building, which exceeded the prior approvals, as Plaintiffs Jack Fiorenza, Jr. and Mario LaVecchia both acknowledged. Statement of Facts ¶s80, 81 and 97.

It is the obligation of the Township to enforce its land use procedures so that the interests of the citizens as a whole can be protected. *See, Deer-Glen Estates*, 39 *N.J. Super.* at 386 ("[t]he citizens...have a right to rely on the valid provisions of their zoning ordinance, and have a right to demand its protection.")  Defendants need not (and should not) bend to the whim of a single landowner who has repeatedly failed to abide by

33

the site plan approval procedures.  Doing so would violate the fiduciary duty owed to the citizens of West Orange as a whole.

Plaintiffs cannot identify (either from their own materials, the fifteen (15) depositions or exhaustive amount of discovery produced by Defendants in this matter) a shred of evidence which supports, much less proves, their claim that Defendants breached the fiduciary duties owed to Plaintiffs. For Defendants to have ignored Plaintiffs' violations, so to avoid the harangue they have endured (daily phone calls for a year; letters several times a week (Statement of Facts ¶s106-108)), would constitute a violation of the allegiance Defendants owe to the citizens of West Orange and that could possibly violate Defendants' fiduciary duty, but not to these Plaintiffs. The filing of this Complaint is a further part of that harangue, but it should end here.  The Fifth Count of Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

## C.   Estoppel (Ninth Count)

In proving a claim based on estoppel, Plaintiffs must prove they relied in good faith on the conduct of Defendants to their detriment.  *Aqua Beach Condominium Association v. Department of Community Affairs, Bureau of Homeowner Protection, New Home Warranty Program*, 186 *N.J.* 5 (2006); *Lizak v. Faria*, 96 *N.J.* 482 (1984).  Estoppel exists to prevent an injustice where the

34

innocent party relies upon misrepresentation to the detriment of the innocent party. *Plemmons v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 263 *N.J. Super.* 151 (App. Div. 1993). However, "only justified and reasonable reliance warrant application of equitable estoppel." *Id.* at 160. As opined by this Court in *Farris v. County of Camden, et al.*, 61 F.Supp..2d 307 (D.N.J. 1999), "one cannot reasonably rely in good faith on a benefit wrongfully obtained." *Id.* at 339. Further, Plaintiffs must prove "manifest injustice" in order to prevail on their claim based on estoppel as the claim is made against a governmental entity. *Casamasino v. City of Jersey City*, 158 *N.J.* 333, 354 (1999).

It is well settled that "municipalities, like individuals, are bound by principals of fair dealing... ." *Palisades Properties, Inc. v. Brunetti*, 44 *N.J.* 117, 131 (1965). However, the New Jersey Supreme Court acknowledged that "equitable estoppel is rarely invoked against a government entity." *Casamasino v. City of Jersey City*, 158 *N.J.* at 354. Estoppel shall only be applied "where the interests of justice, morality and common fairness clearly dictate that course." *405 Monroe Co. v. City of Asbury Park*, 40 *N.J.* 457, 463 (1963).

As stated by the New Jersey Supreme Court in *Palisades Properties, Inc.*, any actions taken by the municipality "must be

35

viewed in the light of the present factual context." *Palisades Properties, Inc.*, 44 N.J. at 132.  In other words, a court must look at the situation as a whole before making a judgment on the actions taken by any municipality.

There are no facts or circumstances in this matter in which the "interests of justice, morality and common fairness" dictate applying equitable estoppel against Defendants.  *Id.* at 131. Discovery has confirmed Plaintiffs herein are far from innocent parties.  Statement of Facts ¶s9-13, 80 and 81.  Plaintiffs chose to construct a building that did not comply with the site plan approved by the Planning Board. Statement of Facts ¶s80 and 101.  Plaintiffs had no legal right or entitlement to proceed with constructing a project that failed to so comply.  A permit cannot alter the approved building envelope and footprint without further action by the Planning Board.  *See*, *Deer-Glen Estates*, 39 *N.J. Super.* at 386.  This is especially true where the permits relied on by Plaintiffs were issued by the father of a contractor working on the Project. Statement of Facts ¶s9-13. Plaintiffs LaVecchia and Jack Fiorenza were not only aware of but knowledgeable of the need to return to the Planning Board for further approval because they encountered this exact issue on a project in Millburn, New Jersey, resulting in payment of a fine to Millburn.  Statement of Facts ¶s81, 97, 98 and 155-162.

36

An inference can certainly be drawn that Plaintiffs were relying on their relationship with the construction code official (Statement of Facts ¶s9 and 101) but that does not constitute good faith reliance, since that reliance is on a "benefit wrongfully obtained." *Farris*, 61 *F.Supp. 2d* at 339.

The scenario here is strikingly similar to the situation confronted by the court in *Frankel v. C. Burwell, Inc.*, 94 *N.J. Super.* 53 (Law Div. 1967):

> [t]he physical differences between the building shown in the 1962 plans and the one shown in the 1966 plans have already been demonstrated.  Clearly, the plans for the building presently proposed have departed substantially from those under contemplation when the variance was granted.
>
> It would seem to be fundamental that a building erected pursuant to a variance must be substantially the building for which the variance was granted.

*Id.* at 59.  Here, Plaintiffs knew what approvals were granted by PB-11-02 and the conditions they were required to meet. Statement of Facts ¶s78 and 79.  Despite that knowledge, Plaintiffs unilaterally chose to construct outside the footprint and envelope of those approvals.  Statement of Facts ¶80.

Furthermore, any permits obtained by Plaintiffs were null and void, and neither issued to them nor relied upon by them in good faith.  Statement of Facts ¶s9-13 and 101.  It is *ultra vires* for a construction official to "approve" a change beyond that authorized by the Planning Board.  *See Deer-Glen Estates,*

37

39 *N.J. Super.* at 384.   The New Jersey Supreme Court opined in

*Hilton Acres v. Klein*, 35 *N.J.* 570, 581 (1961) that:

> [o]ur cases have consistently held that municipal
> action in the land use control field taken in direct
> violation of law or without legal authority is void *ab*
> *initio* and has no legal efficacy.   So a building
> permit issued contrary to a zoning ordinance or
> building code cannot ground any rights in the
> applicant...Nor, *a fortiori*, may a property owner, by
> unilateral action, secure a valid nonconforming use
> based on a violation of the zoning ordinance.
> *Universal Holding Co. v. North Bergen Twp.*, 55 *N.J.*
> *Super.* 103, 111-112, (App. Div. 1959).   These
> authorities expressly hold that no estoppel may arise
> against the municipality in such situations by reason
> of reliance on the part of the property owner or of
> acquiescence and laches by the municipality.   This
> result derives from a recognition of estoppel as a
> vehicle for a just solution, involving a weighing of
> the particular interests and equities.   Where the
> action is without any legal warrant, there is a lack
> of equity in the owner and the public interest
> completely predominates.

Plaintiffs rely on "approvals" by construction officials as

permitting all changes made ("as built" versus planning board

approval). Statement of Facts ¶101. Even assuming that former

construction official Thomas Biondi had "approved" all changes

to the project, that approval is meaningless.   (Interestingly,

Plaintiffs do not allege any wrongdoing on the part of Thomas

Biondi). Statement of Facts ¶12.   The Appellate Division in

*Deer-Glen Estates* recognized that had the building inspector

"issued the Certificate of Occupancy in the face of an

outstanding violation of the side yard provisions of the

ordinance, his actions would have been utterly void and subject to attack." *Deer-Glen Estates,* 39 *N.J. Super.* at 384. The Court in *Deer-Glen Estates* raises and answers its own rhetorical questions, which are instructive in this matter:

> [C]an it be said that the municipality may not object to the deficiency of almost one foot on the eastern side of the house? If the latter violation is permitted where will the line be drawn? A municipality need not overlook, nor will we require it to overlook such a deficiency merely because it arose through the negligence or inattention of the owner or his employees. A builder may not, after a structure is practically completed, come into the Building Inspector's Office with a new plan, and request, belatedly, that a Certificate of Occupancy be issued because of an alleged mistake by the surveyor, architect, contractor or any of their employees. To permit him to do so would open the door to unconscionable, if not fraudulent, conduct on the part of builders. 'Mistake' would then become nothing more than a guise for evading the legal requirements of a zoning ordinance.

> The citizens of Fort Lee have a right to rely on the valid provisions of their zoning ordinance and have a right to demand its protection.

*Deer-Glen Estates,* 39 *N.J. Super.* at 386.

Based on the foregoing, Plaintiffs do not satisfy either threshold factor of "good faith" or "justified and reasonable reliance" requiring the application of estoppel herein. Therefore, this Court should enter judgment in favor of Defendants and against Plaintiffs on Count Nine of Plaintiffs' Complaint.

39

## CONCLUSION

For all of the foregoing reasons, this Court is respectfully requested to grant Defendants' motion in its entirety and dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

William W. Northgrave, Esq.

Dated: October 17, 2008

40